## CLARK v. REMINGTON.
### REMINGTON v. CLARK.
#### Nos. 2560, 2561.

Circuit Court of Appeals, First Circuit.
Jan. 20, 1932.

Stanley M. Burns (of Hughes & Burns), of Dover, N. H., for Charles H. Clark.

Robert W. Upton, of Concord, N. H. (Joseph C. Donovan, of Concord, N. H., and Timothy F. O'Brien, of New Bedford, Mass., on the brief), for Robert and Mona Remington.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

These suits grew out of an automobile collision between a Cadillac automobile owned by the plaintiff Mona P. Remington and a truck belonging to the defendant Clark. The cases were tried together before a jury, which took a view of the place of the accident. The results were a verdict

for Robert K. Remington and against Mona P. Remington. Both parties appealed, with numerous assignments of error.

The accident occurred on the Lafayette road, a trunk line, approximately 2 miles south of the residential part of Portsmouth, N. H., on November 9, 1928, about 8:40 in the evening. On the invitation of the Remingtons, two of their neighbors, Mr. and Mrs. Cook, were traveling with them from New Bedford, Mass., to Camden, Me., for the holiday—Armistice Day. All four were licensed and experienced operators. Remington drove the car from Cambridge to Newburyport, and Cook then took the wheel, and was operating the automobile when the collision occurred. Remington sat in the front seat on Cook's right.

The defendant runs an express business, between Rochester, N. H., and Boston, Mass., by trucks, one of which was an Indiana two-ton, covered truck, about 19 feet long, 6 feet wide, and 9¾ feet high; its body projected about 4½ feet from the rear axle, and stood about 3½ feet from the ground. At the time of the collision, the operator of the truck was Clayton P. Martell. Going north, near the top of a slight incline, the lights of the truck went out. Martell, however, drove on perhaps 200 feet, and then stopped the truck, with the rear end projecting obliquely upon the traveled portion of the (18-foot) highway about 6 or 7 feet. On stopping the truck, Martell got out and looked at each end, front and rear. While the night was dark, it was starlight, and fairly clear. The truck was provided with neither trouble light nor flash-light. Martell then got back into the truck, and undertook to change the fuses, which blew out as fast as he put new ones in. While so engaged, for some five minutes, the collision occurred.

The evidence warranted the jury in finding that, an instant before the collision, a car going south momentarily blinded Cook, the driver of the Cadillac, as well as Remington, sitting on Cook's right. Their testimony was that, almost instantly after meeting that car going south, they first saw the truck; that Cook pulled his car to the left, but hit the corner and outer rear wheel of the truck, severely injuring Remington and the Cadillac. Details of the evidence on damages are properly omitted from this record.

The New Hampshire Statutes contain the usual provisions as to lights, front and rear, on motor vehicles, and prohibit leaving such vehicles upon the main traveled portion of any highway when practicable to park off such main traveled portion.

The District Court ruled that Cook, the driver, was the agent of Mona Remington, the owner of the Cadillac, and that Cook's contributory negligence, if established, would bar her recovery; that Remington had the status of a passenger, and was not barred by the contributory negligence of the driver.

The verdict of the jury in Remington's favor, and against Mrs. Remington, the owner of the car, import findings of negligence against the defendant Clark, of contributory negligence by Cook, the driver, and no contributory negligence by Remington.

The vital questions now urged are as to the defendant's negligence in leaving an unlighted truck on a highway, and as to the contributory negligence of Cook, the driver.

█ The trial court was plainly right in refusing the defendant's request for a directed verdict against Remington. There was sufficient evidence for the jury of negligence by the operator of the truck. The collision did not occur before he had abundant time to place his unlighted truck outside the traveled portion of the highway. On his own story, after driving the truck perhaps 200 feet after the lights went out, he stopped, got out, and "looked at both ends, front and rear * * * to see if they were off the road, to cause no accident and that nobody hit me." The jury might well have found there was no reason why he should not have seen that the truck was still dangerously projecting into the traveled, surfaced portion of the highway, perhaps as far as 6 or 7 feet of the 9-foot right lane, and that there was sufficient room to drive it entirely off the traveled road. The evidence clearly warranted a finding that the defendant was negligent in leaving the unlighted truck in the highway.

██ The evidence that the truck was unequipped with flash-light or trouble light was competent. The jury might well have found negligence in equipping the truck against reasonably possible accidents to its regular lighting system. So also as to the evidence of failure to have the regular lighting system inspected. Defendant's assignments of error as to the admission of evidence on these points are without merit.

All of the defendant's numerous assignments of error, grounded on the admission or exclusion of evidence, have been carefully examined; they require no detailed discussion. They are either entirely without

merit, or at least involve no reversible error.

Rather faintly, the defendant's learned counsel contends that what he describes as the comparatively modern doctrine of "joint adventure" or "joint enterprise" should be applied to the trip of these four persons, making each chargeable with the negligence of any one of the others. We find no evidence warranting this court in not following the established lines. The Cooks were merely the guests of the Remingtons, riding in Mrs. Remington's car, off for the holiday. Mrs. Remington had full legal power of control. This was no joint adventure within the meaning of any applicable doctrine. Compare Bowley v. Duca, 80 N. H. 548, 120 A. 74; Coleman v. Bent, 100 Conn. 527, 124 A. 224; Barry v. Harding, 244 Mass. 588, 139 N. E. 298; Koplitz v. St. Paul, 86 Minn. 373, 90 N. W. 794, 58 L. R. A. 74. See, also, Clark v. Hampton, 83 N. H. 524, 145 A. 265, 61 A. L. R. 1171.

In No. 2561, the action brought by Mrs. Remington in which the jury rendered a verdict for the defendant, the plaintiff complains, in her fourth assignment of error, that the court erred in refusing a requested instruction, and, in her fifth assignment, that it erred in an instruction given to the jury, both of which related to the defendant's negligence.

It is unnecessary to consider whether the court was in error in respect to either, for the plaintiff was not thereby harmed, as the jury found that the defendant was negligent in leaving the truck unlighted with its rear end extending into the highway.

In the sixth and tenth assignments, the plaintiff complains that the court erred in its instructions to the jury in regard to the applicability of chapter 76 of the Laws of New Hampshire 1927, relating to the speed of motor vehicles traversing a grade upon a highway when the driver's view was obstructed within a distance of 100 feet along such highway in the direction in which he is proceeding, and in regard to the driver having his car "under control in passing over the top of a grade," on the ground that they "had no application to the facts in the case"; that there was no rise or grade obstructing the view.

These assignments are without merit. There was evidence from which the jury could find that the grade of the road, over which the plaintiff's car was passing as it approached the place where the truck was parked, was ascending up to a point at the top of a hill 100 to 150 feet back from where the truck was parked, and that from that point to the truck it was descending; that for the last 200 feet before reaching the top of the hill the ascent was greater than it was further back; that the grade of the last 200 feet was such that the lights of the plaintiff's car, while proceeding in that locality, would be thrown into the air above the truck, and would not follow the road and disclose the truck on its side of the hill until the car had passed over the point of the hill and was within a distance of 60 or 70 feet of the truck. In this aspect of the evidence it cannot be said that the vision of the plaintiff's driver, before her car reached the top of the hill, could not be found to have been obstructed within a distance of 100 feet along such highway in the direction in which he was proceeding.

The remaining assignment that is relied upon is No. 12, which concerns the following instructions:

"It is common knowledge that persons driving on the highway in the night are liable to meet other cars and that sometimes the lights may for an instant be confusing. Reasonable care under such conditions requires that the driver reduce his speed even to the point of stopping for his own safety and the safety of others. And if you find that the plaintiff's car was operated at such speed that the driver could not stop or avoid hitting the defendant's truck after it came into view you may consider this as evidence of contributory negligence on his part which will bar the recovery of the plaintiff, Mona Remington, even though you should find the driver of the truck is negligent."

The plaintiff's evidence tended to show that at a point on the highway shortly before the accident occurred an automobile coming from the opposite direction passed the plaintiff's car, and that temporarily the lights of the on-coming car obscured the vision of the driver, and, although the plaintiff's car was then being driven at the rate of thirty or thirty-five miles an hour, the driver was without fault in running into the truck because his vision was temporarily obstructed by the lights.

In considering the above instruction to the jury, the plaintiff picks out the second sentence in the charge reading, "Reasonable care under such conditions requires that the driver reduce his speed even to the point of stopping for his own safety and the safety of others," and contends that the court, in

substance, thereby instructed the jury that, if the plaintiff's driver, when the lights of the on-coming car were passing, did not reduce his speed, this, as a matter of law, was contributory negligence. But this plainly is not so. This sentence cannot be separated out of the paragraph and dealt with by itself. This sentence is directly followed by one explaining and qualifying it; in which the court told the jury that, if they found that the plaintiff's car was operated at such speed that the driver could not stop or avoid hitting the truck after it came into view, they were to "consider this as evidence of contributory negligence on his part"—not that it would be contributory negligence as a matter of law. The only thing in this excerpt from the charge which renders this contention even possible is the use of the word "requires" instead of "may require." But, when the sentence containing it is read in connection with the one that follows, it is plain that the court did not instruct the jury, as a matter of law, that failure of the plaintiff's driver to reduce his speed was contributory negligence, but simply that, if he failed to reduce his speed, it was open to the jury to "consider this as evidence of contributory negligence on his part."

Furthermore, the jury was not misled by this instruction, first, for the reason that the construction which the plaintiff seeks to place upon it is not the proper one; and, second, because elsewhere in the charge the jury were time and time again correctly instructed on the question of the care which the driver was required to exercise and the circumstances under which he could be found to be guilty of contributory negligence.

In No. 2560 the judgment is affirmed.

In No. 2561 the judgment of the District Court is affirmed.