CITY OF BOSTON, Defendant, Appellant,
v.
BOSTON EDISON COMPANY et al.,
Appellees.

CITY OF BOSTON, Defendant, Appellant,
v.
BOSTON EDISON COMPANY, Defendant, Appellee.

Nos. 5352, 5364.

United States Court of Appeals
First Circuit.

Nov. 14, 1958.

17. See also: Whitt v. Kentucky Oil Producing Co., 223 Ky. 348, 3 S.W.2d 786, 787.

Joseph Graglia, Asst. Corp. Counsel, Boston, Mass., with whom William L. Baxter, Corp. Counsel, Boston, Mass., was on brief, for appellant.

Frank B. Frederick, Boston, Mass., with whom Finley H. Perry, Dover, Mass., and Johnson, Clapp, Ives & King, Boston, Mass., were on brief, for Boston Edison Co., appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Lurking in the background on this appeal are interesting questions regarding the liability of joint tortfeasors *inter se* for indemnity or contribution. Despite

the expressed hope of the district judge that the court of appeals would find occasion "to write a classic opinion on this case", we have concluded, in view of the state of the record now before us, that for the most part we ought not to rule on such questions.

The basis for federal jurisdiction of the original complaint is diversity of citizenship. The plaintiffs are various citizens of Texas and Michigan, who are co-owners of certain premises in the city of Boston. There is no doubt that the plaintiffs suffered extensive damage resulting from the flooding of their premises from a city water main that burst. The damage was stipulated by the parties to amount to $30,000, and hence the issue of damages was not submitted to the jury.

The plaintiffs sued two Massachusetts corporations for the damage—the City of Boston and Boston Edison Company. It was the theory of the plaintiffs that the negligence of Boston Edison Co. consisted in its installation, in the year 1930, below the surface of Devonshire Street, Boston, of a steam main too close to a 36-inch water main belonging to the City, in violation of the terms of the permit issued by the City to Boston Edison Co., in consequence of which negligence the break in the water main was eventually caused. The theory on which the plaintiffs' case against the City was submitted to the jury was that the city employees were negligent in failing to take proper precautions against the catastrophic break in said water main after receiving notice of an unusual flow of water near where the break later was discovered.

Pursuant to a special verdict by the jury, the district court on January 10, 1958, entered a judgment that "Plaintiffs shall recover from the defendants, the City of Boston and Boston Edison Company, $30,000," and costs. On the present appeals, this much of the judgment is not challenged. Therefore we must proceed on the assumption that the City and Boston Edison Co. were joint tortfeasors, each liable for the whole damages which the plaintiffs suffered.

By amendment to its answer, Boston Edison Co. filed a cross-complaint against the City based upon a claim that the City's liability was due to "reckless" conduct on the part of the City's employees; "that if the City of Boston had heeded the warnings given to it by Boston Edison Company and taken appropriate action when the peril was known, the damage which the plaintiffs suffered could have been wholly averted." Wherefore Boston Edison Co.'s cross-complaint prayed for a determination "that if judgment is entered in favor of the plaintiffs against Boston Edison Company, that an appropriate order, decree or judgment be made or entered that the City of Boston is liable over to Boston Edison Company and must, by way of restitution, reimburse Boston Edison Company for any damages which Boston Edison Company is compelled to pay to the plaintiffs."

The City then amended its answer to assert a cross-complaint against Boston Edison Co., alleging that the break in the city's water main was caused by the negligent manner in which Boston Edison Co. had installed its steam main and by its violation of the express terms of the permit given by the City. Wherefore the City prayed for a determination "that if judgment is entered in favor of the plaintiffs against the City of Boston, an appropriate order, decree or judgment be made or entered that the Boston Edison Company is liable over to City of Boston and must, by way of restitution, reimburse the City of Boston for any damages which the City of Boston is compelled to pay to the plaintiffs."

■ It is true that there is no independent basis of federal jurisdiction over the two cross-complaints, both involving claims of indemnity as between two Massachusetts corporations. But it is well settled that a federal court has jurisdiction to entertain such cross-complaints as "ancillary" to the main case over which it has undoubted jurisdiction. See Connecticut Indemnity Co. v. Lee, 1 Cir., 1948, 168 F.2d 420, 423; Glen Falls Indemnity Co. v. United States, 9 Cir., 1956, 229 F.2d 370; Morrell v. United

Air Lines Transport Corp., D.C.S.D.N.Y. 1939, 29 F.Supp. 757. There has indeed been no suggestion to the contrary in the present case.

The jury returned a special verdict, answering "yes" to interrogatory No. 3, as follows: "If you found that plaintiffs' damage was caused both by Edison's lack of due care and by the City of Boston's lack of due care, was the City's conduct reckless and wanton?". Upon the basis of the jury's findings, the district court, on January 10, 1958, entered judgment which, in addition to providing that the original plaintiffs recover $30,000 from the two defendants, as above stated, went on to provide:

"(2) Boston Edison Company shall recover from the City of Boston such part and only such part of the sum of $30,000 and costs recovered in paragraph (1) as Boston Edison Company shall show by competent evidence that it has paid or may hereafter pay on account of the recovery of the plaintiffs adjudged in the said Paragraph (1).

"(3) The cross-claim filed by the City of Boston against the Boston Edison Company is dismissed on its merits."

The City's first notice of appeal, in No. 5352, was from paragraphs (2) and (3) of this judgment of January 10.

Subsequently, Boston Edison Co. having satisfied the execution against it for $30,918.10 by payment in full, the court on April 28, 1958, allowed a "Motion for Judgment and Execution" against the City, in favor of Boston Edison Co., in the sum of $30,918.10. The City's second notice of appeal (in No. 5364) is from this alleged judgment of April 28, 1958.

■ Although the City filed two notices of appeal and two cases were docketed in this court, the City has used both appeals only to raise questions as to whether the legal conclusion expressed in the second paragraph of the judgment of January 10, 1958, was correct on the merits. It seems clear that the judgment of January 10 on the cross-claim was a "final judgment" within the meaning of 28 U.S.C. § 1291; it is "final upon the rights of the parties in controversy, and leaves ministerial duties only to be performed." The Palmyra, 1825, 10 Wheat. 502, 504, 23 U.S. 502, 6 L.Ed. 375. In a case similar to this one, St. Louis, I. M. & S. R. Co. v. Southern Express Co., 1883, 108 U.S. 24, 28–29, 2 S.Ct. 6, 8, 27 L.Ed. 638, the Supreme Court defined a final judgment as one which "terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." See also Catlin v. United States, 1945, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911; Ray v. Law, 1805, 3 Cranch 179, 7 U.S. 179, 2 L.Ed. 404. The quoted language aptly describes the posture of this case after the judgment of January 10. It follows that that judgment could not be challenged on the appeal from the allowance of the "Motion for Judgment and Execution." See Whiting v. Bank of United States, 1839, 13 Pet. 6, 38 U.S. 6, 10 L.Ed. 33; In re Forstner Chain Corp., 1 Cir., 1949, 177 F.2d 572. We may assume, without deciding, that on the second appeal the City might have raised questions such as whether Boston Edison Co. had shown its payment of the plaintiffs' execution by "competent evidence". But cf. Steccone v. Morse-Starrett Products Co., 9 Cir., 1951, 191 F.2d 197. In any event, no such contention has been advanced, and the second appeal will therefore be dismissed.

There developed in the common law two somewhat related doctrines: (1) that the plaintiff's contributory negligence is a complete bar to recovery of anything from a negligent defendant, and (2) that there is no right to contribution among joint tortfeasors, one of whom may have been called upon to pay to an injured person more than his pro rata share of a common liability. The unifying idea between these two common law doctrines was the somewhat moralistic feeling that plaintiff in a contributory negligence case, or a person seeking contribution, had himself partly to blame for the predicament in which he found himself, so that the loss ought to be left by the courts where they found it. As far as concerns

the doctrine of contributory negligence, the rationalization has been advanced that juries are incompetent to apply a standard of comparative negligence, so as to cut down the amount of a plaintiff's recovery proportionate to his contributory fault. This rationalization of course is contradicted by our every-day experience with the administration of the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.; and perhaps we may suspect, even in ordinary negligence cases, that juries in fact take account of what they may feel to be contributory fault by a plaintiff in diminishing the amount of a plaintiff's verdict, whatever the trial judge may say to them in his instructions.

Anyway, the courts have not been too enthusiastic either about the application of the doctrine of contributory negligence, which disables a plaintiff from recovering anything, or about the application of the doctrine of no contribution between joint tortfeasors, which similarly disables a joint tortfeasor from recovering anything from a co-tortfeasor.

To avoid the doctrine of contributory negligence, the courts have utilized either of two techniques, a doctrine of the last clear chance, and a doctrine that contributory negligence of the plaintiff should not be available as a defense if the defendant's conduct was more than merely negligent, and consisted of a higher gradation of fault, described as "reckless conduct" or "reckless and wanton" conduct, or, as stated in § 500 of the American Law Institute, Restatement of Torts (1934), a "reckless disregard of the safety of another". These two mitigating doctrines do not amount to an introduction into the law of a concept of comparative negligence, but afford relief against the defense of contributory negligence by going to the opposite extreme, that is, by throwing all the loss on the defendant, notwithstanding that the plaintiff, by his own negligence, has contributed to his own injury.*

We have not mentioned another explanation for the doctrine of contributory negligence—an exercise in empty semantics—namely, that the contributory negligence defense is only an application logically of the principles of proximate or legal cause. See generally, Bohlen, Studies in the Law of Torts (1926) pp. 500 et seq. Thus Bowen, L. J., in Thomas v. Quartermaine, L.R. 18 Q.B.D. 685, 697 (1887), said:

"Contributory negligence arises when there has been a breach of duty on the defendant's part, not where ex hypothesi there has been none. It rests upon the view that though the defendant has in fact been negligent, yet the plaintiff has by his own carelessness severed the causal connection between the defendant's negligence and the accident which has occurred; and that the defendant's negligence accordingly is not the true proximate cause of the injury."

There is a surface plausibility to this form of statement in a case like Butterfield v. Forrester, 11 East 60, 103 Eng. Rep. 926 (K.B.1809), where plaintiff's negligent conduct occurred after the defendant had committed his breach of duty, for instance, where defendant negligently left an obstruction in the highway and plaintiff, driving along carelessly thereafter, ran into it and was injured. Even here, however, if plaintiff's intervening negligence made the plaintiff the sole proximate cause of his own injury, then the plaintiff's action would be defeated by his failure to establish an undoubted element of his own case, namely, that defendant's breach of duty was a proximate cause of plaintiff's damage. If that were so, there would be no need of the affirmative defense of contributory negligence.

Also, the mere fact that a defendant's negligent conduct took place before the plaintiff was negligent does not mean that the defendant's negligence could not be a proximate cause of the resulting injury. For instance, compare the situation in Clark v. Remington, 1 Cir., 1932, 55 F. 2d 48. In that case A negligently left his truck, unlighted in the nighttime, projecting dangerously out into the highway. Subsequently B, driving a Cadillac car negligently, ran into the truck and injured C, a passenger in the Cadillac, who was not barred by the contributory negligence of the driver of the vehicle in which he was riding. In a suit by C against A, the court had no difficulty in holding that A was negligent in parking his truck the way he did, in that he subjected innocent third persons to an undue risk of injury from collision with subsequent motorists, whether driving carefully or negligently, and that A was a

It might be sensible enough thus to throw all the loss on a defendant, where his own conduct has been an intentional wrong, or conduct fairly equivalent to an intentional wrong. Thus, if a defendant, realizing the dangerous likelihood of his course of conduct, persists therein with a subjective state of mind of not caring whether he injures someone or not, it is easy to see that such a defendant is about as bad a person as though he had done an act with the intention of causing harm. Cf. Atchison, T. & S. F. R. Co. v. Baker, 1908, 79 Kan. 183, 98 P. 804, 21 L.R.A., N.S., 427.

But, in practice, this category of "reckless" misconduct has taken on some objective factors. For instance, see the language in § 500 of the Restatement of Torts, "knowing or having reason to know of facts which would lead a reasonable man to realize", etc. Or, as stated in a well-known Minnesota decision, Alger, Smith & Co. v. Duluth-Superior Traction Co., 1904, 93 Minn. 314, 315, 101 N.W. 298, 299:

"There is a well-defined distinction between ordinary negligence and willful or wanton negligence. Ordinary negligence is not actionable if the negligence of the injured party directed [sic] contributed to the result, but liability is incurred by willful negligence irrespective of such contributory negligence. Willful negligence is not simply greater negligence than that of the injured party, nor does it necessarily include the element of malice or an actual intent to injure another. But it is a reckless disregard of the safety of the person or property of another by failing, after discovering the peril, to exercise ordinary care to prevent the impending injury."

Similarly, in a pronouncement of the Supreme Judicial Court of Massachusetts in Commonwealth v. Welansky, 1944, 316 Mass. 383, 399, 55 N.E.2d 902, 910, a passage which the trial judge read to the jury in this case, it was stated: "A man may be reckless within the meaning of the law although he himself thought he was careful." Of course, one must infer in such a case that the "reckless" defendant could not have intended to cause the harm, or could not have been subjectively indifferent as to whether such harm would result. It is therefore not easy to differentiate such conduct from "gross negligence". But see the classic effort by Rugg, C. J., to distinguish negligence and gross negligence from "wanton and reckless conduct", in Altman v. Aronson, 1919, 231 Mass. 588, 121 N.E. 505, 506, 4 A.L.R. 1185.

We dwell upon the foregoing matters merely to venture the suggestion that perhaps the jury in the case at bar would not have strained to find the conduct of the city's employees to be "wanton or reckless", and thus to permit a complete indemnity recovery by Boston Edison Co. against the City, if the members of the jury had been free to apply a general doctrine of contribution as between the two joint tortfeasors.

proximate cause of C's injury. Now, if B were suing A for the property damage to his Cadillac car, B would be barred by the defense of contributory negligence, but not because A's negligence was not a proximate cause of the foreseeable damage to the Cadillac in the subsequent collision. See also Cordiner v. Los Angeles Traction Co., 1907, 5 Cal. App. 400, 91 P. 436.

In addition, the proximate cause explanation of the defense of contributory negligence would obviously be inadequate to explain other situations in which the defense is available, namely, where the respective negligent conduct of the plaintiff and defendant is in all respects simultaneous, and where plaintiff's negligent conduct took place prior to that of the defendant but where, under the law of the particular jurisdiction, defendant was not said to have had a "last clear chance". Cleveland R. Co. v. Masterson, 1932, 126 Ohio St. 42, 183 N.E. 873, 92 A.L.R. 15. See also Clark v. Boston & Maine R. R., 1935, 87 N.H. 434, 437, 182 A. 175, 178.

Similar criticism may be made of the tendency of some courts to explain the doctrine of the last clear chance as being an instance of the application of notions of proximate cause. See Small v. Boston & Maine R. R., 1932, 85 N.H. 330, 159 A. 298.

It is true, the doctrine of no contribution between joint tortfeasors has been subjected to searching criticism. See Knell v. Feltman, 1949, 85 U.S.App.D.C. 22, 174 F.2d 662; Jones, "Contribution Among Tortfeasors," 11 U.Fla.L.Rev. 175 (1958). The doctrine has been changed by statute in many states. See Uniform Contribution Among Tortfeasors Act (1955); Law Reform (Married Women and Tortfeasors) Act, 1935, 25 & 26 Geo. 5, Ch. 30, pt. II.

But even in the absence of statute, it might have been supposed that no common law court would have applied the doctrine of no contribution among joint tortfeasors as between two tortfeasors, neither of whom was in any respect personally at fault but each of whom was held liable to the injured third person by imposition of law pursuant to the rule of *"respondeat superior"*. However, somewhat illogically, the common law seems to have assumed the contrary. See Restatement of Restitution § 87, comment a (1937). Where the two so-called joint tortfeasors sued are not the negligent individuals but are their respective corporate employers, artificial legal entities which can only be deemed to have acted in so far as the conduct of certain human beings is attributed to them, their liability to third persons, as in the case at bar, seems to be a species of liability based on the doctrine of *respondeat superior*. Yet contribution apparently is denied as between two such corporations, both of which have been held liable for injuries caused by negligence of their respective servants. Union Stock Yards Co. of Omaha v. Chicago, Burlington & Quincy R. Co., 1905, 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453. See also Fidelity & Casualty Co. of New York v. Chapman, 1941, 167 Or. 661, 120 P.2d 223. We assume, without deciding, that the common law of Massachusetts would be in accord with the foregoing decisions. Even if the contrary assumption be made, the trial judge can hardly be charged with error in not submitting to the jury a theory of contributory recovery, in the absence of a request so to do.

Nevertheless, we suppose that the state law of Massachusetts would recognize a right of indemnity as between joint tortfeasors in the circumstances stated in § 97 of the Restatement of Restitution, as follows:

"A person whose negligent conduct combined with the reckless or intentionally wrongful conduct of another has resulted in injury for which both have become liable in tort to a third person is entitled to indemnity from the other for expenditures properly made in the discharge of such liability, if the other knew of the peril and could have averted the harm at a time when the negligent tortfeasor could not have done so."

At any rate, that was the theory on which the trial judge left to the jury in the present case the cross-complaint for indemnity which Boston Edison Co. filed against the City of Boston. At the conclusion of the trial judge's charge to the jury, neither party voiced any objection, so far as appears, to the language in which the trial judge left the issue of indemnity to the jury, and therefore we take it that even if there were error in this respect, which we do not see that there was, it is now too late for the City of Boston to urge such error as ground for reversal. See Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A.

Nor was any motion made by the City of Boston, at the conclusion of all the evidence, for a directed verdict in its favor on the cross-complaint filed by Boston Edison Co. on the ground that as a matter of law there was no evidence from which a jury could rationally find that the conduct of the city's employees amounted to "wanton or reckless" conduct. If it be assumed that the question of the absence of such evidence is still open to us on this appeal, we can only say that, in view of the recognition in the Massachusetts cases of the objective factors which may enter into the characterization of conduct as being "wanton or reckless", the trial judge was bound, on the evidence presented, to submit this issue to the jury. Nor can we say that the

trial judge committed an abuse of discretion in denying the City's motion for a new trial.

We observe that the City of Boston, at the conclusion of the evidence, did submit to the court a so-called "Request for Rulings of Law" in the following words:

"1. By the terms of Revised Ordinances of 1947, City of Boston, Chapter 27, Section 18, the construction by the Boston Edison Company of its steam main under the 36″ water main constitutes an agreement on the part of the defendant Boston Edison Company to hold the City harmless from any claim for damages which it may sustain or which it may be required to pay.

"2. If the jury finds that the construction by the defendant Boston Edison Company of its steam pipe with the spud and its concrete housing was in violation of the terms of the permit granted to it and caused the break in the 36″ water main, the defendant City of Boston is entitled to indemnity from the defendant Boston Edison Company for any damages which the City may be held liable to the plaintiffs in this action."

In so far as concerns the cross-complaint for indemnity filed by the City against Boston Edison Co., it might seem that the correctness of the ruling of the trial judge, in dismissing this cross-complaint, is now moot, in view of the fact that Boston Edison Co. has meanwhile paid in full the common judgment recovered by the original plaintiffs against the two defendants, so that the City will now no longer ever have to invoke any claim for indemnity on account of having paid any part of such judgment.

But since it could not be that the City and Boston Edison Co. would each have a conditional right to indemnity against the other, it may be that any error committed by the trial judge in denying the City's aforesaid requests for rulings of law is still open to us to consider, as affecting the correctness of the trial judge's action in granting judgment in favor of Boston Edison Co. on its cross-complaint.

█ Assuming that this question is open to us, we think that the trial judge was correct in dismissing the City's cross-complaint. Such cross-complaint for indemnity was based upon a provision of § 18 of Ch. 27 of the Revised Ordinances of 1947 of the City of Boston to the effect that any person maintaining a structure under a street "shall do so only on condition that such maintenance shall be considered as an agreement on his part with the city to keep the same and the covers thereof in good repair and condition at all times during his ownership and to indemnify and save harmless the city against any and all damages, costs, expenses, or compensation which it may sustain or be required to pay, by reason of such excavation or structure being under or in the street, or being out of repair during his ownership * * *." The district judge rejected as being wholly unsupported by the evidence a claim by the original plaintiffs that there was a lack of due care by the city employees at the time the steam pipe was installed by Boston Edison Co. in 1930. So far as concerned the possible liability of the City, he left to the jury only the question whether the city employees had been lacking in due care and diligence in their failure to act promptly and effectively once it had been reported to the City that an unusual flow of city water was occurring near where the break in the city water main was later discovered, this of course having nothing to do with what might have caused the break in the water main. Cf. Vaillancourt v. Manchester Gas Co., 1936, 88 N.H. 95, 184 A. 353. Hence, it was the view of the district judge that the agreement of indemnity to be implied from the terms of § 18 of Ch. 27 could not, as a matter of interpretation, be considered as being intended to save the City harmless from the consequences of its own subsequent independent negligence. In this connection it seems to us that there is relevant language of the Supreme Judicial Court in Laskowski v. Manning,

1950, 325 Mass. 393, 398, 91 N.E.2d 231, 234, to the effect that a contract of indemnity " 'will not be considered as indemnifying one against his own negligence, or that of his employees, unless its express language requires it. Such an intent must unequivocally appear, and words of general import are not sufficient. It is not to be assumed in the absence of clear stipulation that a contract is to be construed as creating a result so far reaching, and involving consequences which may be so hazardous and momentous.' " Especially now, in view of the unassailable finding of the jury in its special verdict to the effect that this subsequent action, or inaction, by the city employees amounted to "wanton or reckless conduct", it is even more difficult to suppose that this so-called agreement of indemnity was intended to relieve the City of the consequences of such a serious gradation of fault.

A judgment will be entered affirming the judgment of the District Court in No. 5352 and dismissing the appeal in No. 5364.