**GENERAL HEATING ENGINEERING COMPANY, Inc., et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 16325.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 15, 1961.

Decided March 15, 1962.

Petition for Rehearing Before the Division Denied April 11, 1962.

Petition for Rehearing En Banc Denied En Banc April 11, 1962.

As Amended May 14, 1962.

**550**

Mr. John F. Mahoney, Jr., Washington, D. C., with whom Messrs. Charles E. Pledger, Jr., Justin L. Edgerton and R. Harrison Pledger, Jr., Washington, D. C., were on the brief for appellant General Heating Engineering Company, argued for all appellants.

Mr. H. Thomas Sisk, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp.

Counsel, Milton D. Korman, Principal Assistant Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief for appellee.

Messrs. J. Harry Welch, H. Mason Welch, J. Joseph Barse and Arthur V. Butler, Washington, D. C., were on the brief for appellant D'Aprile Brothers Company.

Messrs. Richard W. Galiher, William E. Stewart, Jr., and William J. Donnelly, Jr., Washington, D. C., were on the brief for appellant Arthur G. Bradley.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

■ Mr. and Mrs. Boorstein, plaintiffs in an earlier action in the Municipal Court, sued all but one of the parties[1] to this appeal for damages sustained when their car fell into a street excavation. The excavation had been dug and backfilled by our present appellants [hereinafter referred to as contractors] in connection with their construction activities and pursuant to a permit issued by the District of Columbia. In that earlier action, the court directed a verdict in favor of the contractors but allowed the jury to find the District liable to the injured Boorsteins. The District did not appeal but paid the judgments and then brought the present suit in the Municipal Court against the contractors for indemnification. On the ground that the earlier judgment was conclusive upon the issues in this suit,[2] the court directed a verdict

---

1. Appellant Bradley, who signed the permit application discussed below on behalf of General Heating, was not a party to the earlier action.

2. It is not entirely clear from the record before us just what was established between the parties to this suit by the earlier judgment. But the Municipal Court of Appeals held in the present suit that, as against the injured persons, the first proceeding established the District's negligence and the contractors' freedom from negligence. Since the parties have not objected to the holding, we have assumed its validity for purposes of this appeal. See Hecht Co. v. District of Columbia, 139 A.2d 857 (D.C.Mun.Ct.App. 1958); Central Surety & Ins. Corp. v. Mississippi Export R. Co., 91 F.2d 125 (5th Cir. 1937); A.B.C. Fireproof Warehouse Co. v. Atchison, T. & S. F. R., 122 F.2d 657 (8th Cir. 1941); Restatement, Judgments § 103 (1942). But see Lowery v. Muse, 151 A.2d 263 (D.C. Mun.Ct.App.1959).

for the contractors at the close of the District's case.

The Municipal Court of Appeals reversed. It held that the contractors' application for an excavation permit contained an indemnity provision, set out in the margin below,[3] which was "so broad * * * that although it contains no express stipulation indemnifying against a party's own negligence, it accomplished the same purpose."

■ We agree that the District is entitled to indemnity in this case. In reaching this conclusion, however, we find it unnecessary to decide whether the "broad" indemnity clause in the permit application generally entitles the District to indemnification despite any negligence on its part and despite the contractors' freedom from negligence.[4] For our only concern here is with the specific negligence of the District's ten-day delay in resurfacing.

■ One of the provisions of the permit application imposes an obligation upon the contractors "to insure that such excavation is kept in a safe condition until such street * * * had been repaired or resurfaced by the District of Columbia."[5] That provision demonstrates that the parties anticipated a delay between the contractors' backfilling and the District's resurfacing, and that the delay would endanger the public unless someone was responsible for keeping the cut safe. The permit application, as construed by the Municipal Court of Appeals, places that duty upon the contractors for a reasonable period. In the earlier suit the District's delay in resurfacing was held a breach of its duty to the general public (i. e., negligence). It seems clear to us, however, that this could not determine the scope of the contractors' duty to the District under the cited provision of the permit application.[6] The District did not cross-claim against the contractors in the earlier action. Hence the scope of their duty to the District was not before the court.

We agree with the Municipal Court of Appeals that the permit application must be construed to require the contractors to keep the cut safe only for a reasonable time, and that the ten-day period involved here was reasonable *as between these parties*. We therefore conclude that appellants' failure to discharge that duty makes them liable to the District under the provision of the application which prescribes indemnification "for all * *

---

3. The application provides "that the applicant will save harmless, indemnify, and keep indemnified the District of Columbia, its officers and employees, from all claims, suits, charges, counsel fees, and judgments to which the said District, its officers and employees may be subject on account of injury to persons or damage to property, including property of the District of Columbia, due to negligence of the applicant, or occasioned by work not authorized by said permit or resulting from failure to observe and comply with terms and conditions of this application."

4. See generally Maiatico v. Hot Shoppes, Inc., 109 U.S.App.D.C. 310, 287 F.2d 349 (1961); Kay v. Cain, 81 U.S.App. D.C. 24, 154 F.2d 305 (1946); City of Boston v. Boston Edison Co., 260 F.2d 872, 879–80 (1st Cir. 1958); Batson-Cook Co. v. Industrial Steel Erectors, 257 F.2d 410, 413 (5th Cir. 1958).

5. This provision, the contractors say, is unconscionable and should not be enforced because the application prohibits "interference with traffic unless such interference is specifically authorized by the Director of Highways or his representative" and thereby prevents the applicant from discharging his duty to keep the excavation safe. But nothing in this record shows that the contractors sought or required permission to close off the street; or that closing the street was the only means of keeping the excavation safe prior to resurfacing.

6. See George A. Fuller Co. v. Otis Elevator Co., 245 U.S. 489, 38 S.Ct. 180, 62 L.Ed. 422 (1918) (alternative ground); Hines v. Welch, 57 App.D.C. 371, 23 F.2d 979 (1928); Burley Irr. Dist. v. Ickes, 73 App.D.C. 23, 32, 116 F.2d 529, 538 (1940), cert. denied, 312 U.S. 687, 61 S.Ct. 614, 85 L.Ed. 1124 (1941); Kincade v. Wah, 38 A.2d 112 (D.C.Mun.Ct. App. (1944); Restatement, Judgments §§ 70, 82 (1942).

judgments * * * resulting from failure to observe and comply with terms and conditions of this application."

Affirmed.

WILBUR K. MILLER, Chief Judge (dissenting).

In 1957, D'Aprile Brothers Company employed General Heating Engineering Company to do the plumbing and heating work in connection with its construction of a new house. General Heating engaged Bradley, a plumber, who applied to the District of Columbia for the necessary permits to excavate in the street for the purpose of making water and sewer connections. The application forms contained the following paragraphs concerning indemnity:

"(3) That the applicant, at the applicant's risk and expense, guarantees that the public space occupied by the applicant or required for the performance of the work authorized by the said permit, at all times will be kept in a safe condition, and where the work aforesaid results in any excavation in any street, alley, sidewalk, or other public space, the applicant will insure that such excavation is kept in a safe condition until such street, alley, sidewalk, or other public space has been repaired or resurfaced by the District of Columbia. The repair or resurfacing of the street, alley, sidewalk or other public space made necessary by the excavation, will be performed by the District of Columbia at the expense of the applicant.

* * * * * *

"(5) That the applicant will save harmless, indemnify, and keep indemnified the District of Columbia, its officers and employees, from all claims, suits, charges, counsel fees, and judgments to which the said District, its officers and employees may be subject on account of injury to persons or damage to property, including property of the District of Columbia, due to negligence of the applicant, or occasioned by work not authorized by said permit, or resulting from failure to observe and comply with terms and conditions of this application.

* * * * * *

"(7) That the applicant agrees that all portions of the street excavated will be put in as good condition as before the excavation was made and that such excavation will be backfilled within twenty-four (24) hours after approval by the District (if required) of the construction, connections or repairs installed or made therein, such backfilling not to extend more than two inches (2″) above the adjoining pavement or surface and to be thoroughly compacted in such manner as to avoid any sinking or settlement either of the backfill or of any pavement laid thereon for a period of two (2) years after the area over such excavation has been repaired or resurfaced by the District."

Permits were granted June 10, 1957. The excavation or cut was immediately made and promptly refilled and packed, and the District of Columbia was notified on June 13 that it might repair or resurface the area, which it alone had the authority to do. On June 23, 1957, the District having done nothing and a heavy rain apparently having caused the backfill to sink, two motorists were injured and their car damaged when they ran into the excavation.

The injured persons brought suit in the Municipal Court against General Heating, D'Aprile Brothers and the District of Columbia. Directed verdicts for the owner and contractor were entered, but the case against the District was submitted to the jury to determine whether it had unreasonably delayed doing the resurfacing and had thereby negligently caused the accident. Substantial verdicts were returned against the District of Columbia.

The District did not appeal, but paid the judgment debts and then sued General

Heating, D'Aprile Brothers and Bradley [1] in the Municipal Court to recover the sums paid, relying on the indemnification agreements made in the permit applications, to which I shall make further reference. At the trial of the indemnity suit, the Municipal Court directed a verdict for the defendants, being of the opinion that the issue of their liability to the District had been determined in the earlier case and could not be raised again.

On appeal by the District of Columbia, the Municipal Court of Appeals, with Judge Cayton dissenting, reversed with instructions to enter judgment for the District of Columbia.[2] It said, *inter alia*, at page 904:

> "We agree that the prior action established that, so far as the Boorsteins [the injured motorists] were concerned, the District was negligent in failing to resurface the cut within a reasonable time, and that the injuries suffered by the Boorsteins did not result from any negligence on the part of either D'Aprile Brothers or General Heating. *The question here, however, is whether the District is entitled to indemnity from the results of its own negligence.*" (Emphasis added.)

The Municipal Court of Appeals went on to say, at page 905:

> " * * * It was not unreasonable for the District to require that it be indemnified against its liability to the public even though such liability arose from its own negligence.

> "The fact that the District was notified when the backfill was completed and failed within ten days to resurface the fill does not alter the situation. As far as the Boorsteins were concerned, the jury found the ten-day delay on the part of the District to be unreasonable, but it does not follow from this that appellees were relieved of their liability under the indemnity agreement. Notifying the District that the excavation had been filled and was ready for resurfacing did not end appellees' liability. They could not in reason expect the District to immediately resurface and they were well aware that refill in an excavation could settle or wash away and create a dangerous condition. Probably they had the right to demand that the District act within a reasonable time, but we rule as a matter of law that under the indemnity agreement ten days' delay was not unreasonable.

> "We hold that all appellees were liable under the indemnity agreement. The permit named only D'Aprile Brothers and Bradley, and did not name General Heating, but the president of General Heating made it clear that Bradley in applying for the permit was acting on behalf of General Heating. What may be the respective liabilities among the appellees is not before us."

We granted an appeal from the judgment of the Municipal Court of Appeals. In affirming, my colleagues "agree that the District is entitled to indemnity in this case" but they do not pass on the validity of the ground upon which the Municipal Court of Appeals based its decision—that the indemnity agreements protected the indemnitee against its own independent negligence. They avoid that question by holding as a matter of law that the District was not negligent in failing to resurface the fill before the accident occurred. This was, of course, contrary to the factual finding of the jury in the damage suit that the District negligently failed to repair within a reasonable time. My colleagues flatly say "the ten-day period [of delay in resurfacing] involved here was reasonable."

This dissent is based on two propositions: (1) as the District's sole negligence was res judicata, the majority err

---

1. Bradley was not a party to the suit brought by the injured motorists.

2. District of Columbia v. General Heating Engineering Co., Inc. et al., D.C.Mun. App., 168 A.2d 903 (1961).

in holding as a matter of law that, for the purposes of this indemnity suit, the District's delay was not negligence; and (2) the agreements here involved do not indemnify the District against its own negligence. Hence its suit fails. These propositions will be discussed in order.

1. *The District's negligence.* In the first case—the motorists' damage suit—the trial judge carefully and correctly instructed the jury with respect to the liability of the District of Columbia. I quote from the concluding paragraphs of the charge:

> " * * * You are to make up your own minds as to whether or not the time that elapsed from the time they [the District of Columbia] may have gotten [notice that the area was ready for resurfacing] was a sufficient amount of time to give them a reasonable opportunity to cover this cut that was there.

> "If you find that they did have reasonable time and that they failed to cover this cut as I have indicated then they are liable. On the other hand, if you believe that they did not have reasonable time and that operating within the bounds of reason for a large concern such as the District of Columbia—if they did not have a reasonable amount of time then your verdict must be for the defendant."

Indubitably, I think, the jury's award of damages against it was based on a finding that the District had been negligent in failing to repair the street's surface within a reasonable time after notice. There was no other possible basis for the verdict.

The question is, then, whether the unappealed judgment in the damage suit is res judicata against the District in the present case on the question whether it was guilty of negligent delay in resurfacing. Section 70, Restatement, Judgments (1942), is cited by the majority in support of their holding that the first judgment is not res judicata. As I think it supports the opposite view, I quote § 70:

> "Where a question of law essential to the judgment is actually litigated and determined by a valid and final personal judgment, the determination is not conclusive between the parties in a subsequent action on a different cause of action, *except where both causes of action arose out of the same subject matter or transaction*; and in any event it is not conclusive if injustice would result." (Emphasis added.)

It seems to me that § 106, Restatement, Judgments (1942), is also relevant in this connection. It is as follows:

> "Rights of Indemnitee and Indemnitor Inter Se After Action in Which They are Joined.

> "Where an action is brought against two persons who are claimed to be parties in a single contract or liable for a single harm, and valid and consistent judgments are rendered with respect to each, *the judgments for or against one of them is conclusive upon the other as to matters decided therein, in a subsequent action between them for indemnity or contribution,* if and only if the other had an opportunity to defend or to participate in the defense." (Emphasis added.)

Of course the District had the opportunity to and did defend in the original action, so the italicized portion of the quotation comes into play.

In deciding whether the judgment against the District in the damage suit is res judicata as to the District's negligence in failing to resurface, two questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in this action for indemnity? If so, was there a final judgment on the merits in the first case? Bernhard v. Bank of America Nat. Trust & Sav. Ass'n.[3]

---

3. 19 Cal.2d 807, 122 P.2d 892 (1942).

The usual test of identity of issues is whether the same evidence would suffice to sustain both.[4] Measured by this criterion, the issue of the District's negligence in this case is identical with that issue in the damage suit. In the latter action, the question was directly presented; the District had its day in court concerning it, and did not appeal from the adverse determination. Accordingly, there was a final judgment in the damage suit on the merits of the question whether the District was guilty of negligent delay. For these reasons, I think its negligence is res judicata and cannot be relitigated here.

In deciding for the District because the appellants agreed to keep the excavation safe until the District had repaired it (which my colleagues concede it must do within a reasonable time), the majority of course invoke and rely upon the indemnity provisions. As the District was the only negligent party, the question whether it was indemnified against its own negligence cannot be avoided. On that subject, I make the suggestions which follow.

2. *The District was not indemnified against its own negligence.* It is a general rule that an indemnity agreement does not protect the indemnitee from the consequences of his own independent negligence unless its language expressly provides for such indemnity. The intent to provide it must clearly and unequivocally appear, and it is held that words of general import are not enough.

Among the many cases so holding is City of Boston v. Boston Edison Company.[5] There the original plaintiffs, who were individuals, suffered damage when a city water main burst and flooded premises owned by them. They sued Boston Edison Company and the City of Boston, claiming the former was negligent in installing, many years before, a steam main in a street so close to a city water main that it not only violated the installation permit granted by the City but also eventually caused the water main to burst; and that the City was negligent in failing to take proper precautions against the break in the water main, after receiving notice of an unusual flow of water near the place where the break was later discovered.

The jury's verdict was that "Plaintiffs shall recover from the defendants, the City of Boston and Boston Edison Company, $30,000." Thus each was liable for the whole. The defendants having filed cross-complaints against each other, the District Court held Boston Edison Company entitled to recover from the City such part of the judgment as it had paid or might thereafter pay, and dismissed the cross-complaint of the City of Boston. The City appealed.

The cross-complaint against Boston Edison was based on an ordinance providing that any person maintaining a structure under a street

" * * * shall do so only on condition that such maintenance shall be considered as an agreement on his part with the city to keep the same and the covers thereof in good repair and condition at all times during his ownership and to indemnify and save harmless the city against any and all damages, costs, expenses, or compensation which it may sustain or be required to pay, by reason of such excavation or structure being under or in the street, or being out of repair during his ownership * * *."

It had theretofore been determined by the jury, however, that the City was negligent in failing to act promptly and effectively when it received notice that an unusual flow of city water was occurring near the place where the break in the city water main was later discovered. Hence, the City's cross-complaint, based on the indemnity provision of the ordinance, was dismissed because the District Court held that provision could not be considered as intended to save the City harmless from the conse-

---

4. Syms v. McRitchie, 187 F.2d 915 (5th Cir. 1951).

5. 260 F.2d 872 (1st Cir. 1958).

quences of its own subsequent independent negligence.

In upholding the dismissal, the First Circuit adopted as relevant the following language in Laskowski v. Manning[6] to the effect that a contract of indemnity

"* * * 'will not be considered as indemnifying one against his own negligence, or that of his employees, unless its express language requires it. Such an intent must unequivocally appear, and words of general import are not sufficient. It is not to be assumed in the absence of clear stipulation that a contract is to be construed as creating a result so far reaching, and involving consequences which may be so hazardous and momentous.' * * * "[7]

After this quotation, the First Circuit added, 260 F.2d at page 880:

"* * * Especially now, in view of the unassailable finding of the jury in its special verdict to the effect that this subsequent action, or inaction, by the city employees amounted to 'wanton or reckless conduct', it is even more difficult to suppose that this so-called agreement of indemnity was intended to relieve the City of the consequences of such a serious gradation of fault."

The general rule to which I have referred was stated in Southern Bell Tel. & Tel. Co. v. Mayor and Bd. of Aldermen[8] as follows:

"It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against

losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. [Cases cited.] * * * "

The Fifth Circuit also held, in Halliburton Oil Well Cementing Co. v. Paulk,[9] that indemnity agreements are strictly construed against him who claims to be an indemnitee, and further said:

"* * * This is particularly true where the result would be to indemnify against one's own negligence, and it will not be so construed unless such obligation is expressed in unequivocal terms. [Cases cited.] * * * "

On the basis of these cases and many other authorities to the same effect, I conclude the indemnity agreements here involved do not protect the District against its own negligence because they do not expressly, clearly and unequivocally provide for such protection; in fact they do not so provide even in general terms which, as I have shown, would not be enough.

I suggest the following excerpt from our opinion in District of Columbia v. Vignau[10] is relevant in this connection:

"* * * [A] municipality cannot recover over for damages caused by an obstruction for which it alone is responsible; *as where the duty of* construction or *making repairs is on the municipality and the injuries are caused by defects which it negligently permits to continue * * *.*" (Emphasis added.)

In sum, I think the judgment appealed from should be reversed.

---

6. 325 Mass. 393, 91 N.E.2d 231, 234 (1950).

7. In the Laskowski opinion, the court quoted this language from an earlier Massachusetts decision, Boston & Maine Railroad v. T. Stuart & Son Co., 236 Mass. 98, 104, 127 N.E. 532, 534 (1920).

8. 74 F.2d 983, 984–985 (5th Cir. 1935).

9. 180 F.2d 79, 84 (5th Cir. 1950).

10. 79 U.S.App.D.C. 188, 189, 144 F.2d 641, 642, cert. denied 323 U.S. 781, 65 S.Ct. 270, 89 L.Ed. 624 (1944).