**ATLANTIC CORPORATION, Defendant, Appellant,**

v.

**UNITED STATES of America et al., Appellees.**

**No. 6038.**

United States Court of Appeals First Circuit.

Dec. 31, 1962.

Roland E. Shaine, Boston, Mass., Henry Gesmer and Brown, Rudnick, Freed & Gesmer, Boston, Mass., on the brief, for appellant.

Thomas A. Skornia, Attorney, Department of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Joseph Kovner, Attorneys, Department of Justice, W. Arthur Garrity, Jr., U. S. Atty., and Daniel B. Bickford, Asst. U. S. Atty., on the brief, for appellee, United States of America.

John W. Blakeney, Boston, Mass., Blakeney & Blakeney, Boston, Mass., on the brief, for appellee, Continental Casualty Company.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a case in which we might be tempted to wonder whether appellant can ever make the full circuit home.[1]

1. See J. J. Struzziery Co. v. A. V. Taurasi Co., 1960, 340 Mass. 481, 165 N.E.2d 120, a case decided against appellant on the merits by the denial of its motion to intervene, 340 Mass. at 487, 165 N.E.2d at 123, and establishing a broad principle with respect to "retained percentages," infra. For reasons not worth detailing

However, the only question before us is whether it was properly called out before reaching first, and we will confine ourselves to that single issue. Appellant, Atlantic Corporation, a Massachusetts corporation, is one of a number of parties defendant named in a complaint filed in 1958 by the United States under 26 U.S.C. § 7403 to enforce liens totalling $102,000 for certain 1956 and 1957 taxes owed by defendant taxpayer, A. V. Taurasi Co., a Massachusetts contracting company. The liens were asserted against funds of half a million dollars or more held by defendant Commonwealth of Massachusetts. On the pleadings the funds consist of "retained percentages" (see Mass.G.L. c. 30, § 39) and possibly other amounts due taxpayer under three road construction contracts with the Commonwealth. The other defendants, in addition to taxpayer and its receiver in bankruptcy, are Continental Casualty Co. and Hartford Accident & Indemnity Co., its sureties on the first, and other two contracts, respectively, and a substantial number of its alleged suppliers of labor and materials, largely Massachusetts corporations or citizens. Appellant and all other defendants except the Commonwealth are alleged to have possible interests, by contract, lien, or otherwise, in the funds, but all such interests, according to the complaint, are inferior to the government's tax liens.

The defendant laborers and materialmen answered that their interests were superior. The surety companies, Hartford in the form of a formal cross-claim, Continental as a separate "defense," agreed that the funds should be first used to pay the defendant laborers and materialmen, and alleged that any balance should be paid to themselves under their contracts with taxpayer. Continental further alleged that by decree of the Massachusetts Superior Court, dated the day the complaint was filed, the Commonwealth had been ordered to disburse the retained percentages under the contract secured by Continental to the laborers and materialmen to the exclusion of Atlantic.[2] Finally, Atlantic answered that its claim, in the amount of $106,000, came ahead of the government, or any other defendant, by virtue of assignments from taxpayer under all three contracts. It prayed that this be adjudged, and that said amount be ordered paid to it. Thereafter, on motion of the government, the Commonwealth was enjoined from distributing the funds until further order of court.[3]

On May 7, 1962, a so-called stipulation of dismissal with prejudice as against Continental, signed by the government and by Continental, was filed, and initialled by the court.[4] On the same day the court allowed the government's motion for a dissolution of the injunction. On May 29 the government moved "pursuant to Rule 41(b) of the Rules of Civil Procedure that the above entitled action be dismissed without prejudice." This motion was heard on June 4, and on June 6 the court filed a memorandum stating that the government's motion was allowed against all defendants except Atlantic, and that the "case is retained for the adjudication of the claim of Atlantic Corporation." Thereafter the government renewed its full motion, and following a hearing the court handed down an opinion reciting that the government had "discharged the liens," that the court had previously "allowed the motion as to all parties except the United States and the Atlantic Corporation * * * [and] the Court now allows the government's motion in full as it no longer has jurisdiction of this cause." Subsequently a formal order was entered dismissing the case. Atlantic duly appealed from all of these actions.

we do not agree, however, with the claim of certain appellees that this appeal is moot.

2. This decree has since been affirmed. See n. 1, supra.

3. To some extent we have simplified the facts and telescoped various pleadings.

4. This did not dismiss Continental from the case so far as any claims against it by Atlantic were concerned. Rudloff v. Johnson, 8 Cir., 1959, 267 F.2d 708.

This case involves a series of misconceptions, beginning with the government's attempt to dismiss under the wrong section of the rule. In this court the government concedes that it was not entitled to a dismissal under Rule 41 (b), and that it was not entitled as of right to a dismissal as against Atlantic without prejudice under Rule 41(a) (2). It has stipulated that the dismissal may be made with prejudice so far as its claim to a prior lien on the funds is concerned. Atlantic is apprehensive nonetheless, and argues that there should be no dismissal on any basis because of the effect of a dismissal (as determined by the district court) upon the court's jurisdiction to adjudicate Atlantic's rights as against the other claimants.

■ The presence or absence of the government had nothing to do with the court's jurisdiction over the balance of the case. If Atlantic had a proper cross-claim against its co-defendants this gave the court ancillary jurisdiction even though all the parties to the cross-claim were citizens of the same state. City of Boston v. Boston Edison Co., 1 Cir., 1958, 260 F.2d 872; R. M. Smythe & Co. v. Chase National Bank of New York, 2 Cir., 1961, 291 F.2d 721; Childress v. Cook, 5 Cir., 1957, 245 F.2d 798. The termination of the original action would not affect this. This is but one illustration of the elementary principle that jurisdiction which has once attached is not lost by subsequent events. See discussion in Home Ins. Co. of New York v. Trotter, 8 Cir., 1942, 130 F.2d 800, at 804. The district court's seeming view that it lost jurisdiction of an otherwise justiciable matter was erroneous. Rather, the question was whether it ever had such jurisdiction.

While Atlantic's pleading was not drawn with technical proficiency, in substance it was clearly an attempt to assert a cross-claim for a determination of preference, and payment, as against its co-defendants. Its propriety depends upon whether it was a claim "arising out of the transaction or occurrence that is the subject matter * * * of the original action * * * or relating to any property that is the subject matter of the original action," so as to constitute a permissible cross-claim within F.R.Civ. P. 13(g). Plainly Atlantic's claim did not arise out of the original transaction or occurrence. The question, accordingly, is how broadly we should read the "property" clause.

■ There are two reasons why it may be proper to permit a defendant to proceed by way of cross-claim instead of by independent suit, which may be denominated necessity and convenience. Obviously the court must avoid granting relief which would work affirmative injustice as between parties defendant. This could occur both in cases which might be said to involve the original transaction or occurrence, see Rickey Land & Cattle Co. v. Miller & Lux, 1910, 218 U.S. 258, 263, 31 S.Ct. 11, 54 L.Ed. 1032, and in broader situations where, because the court had taken possession of property, it must correctly administer it. Morgan's, etc., Co. v. Texas Central Ry., 1890, 137 U.S. 171, 11 S.Ct. 61, 34 L.Ed. 625.[5] In the event of necessity there could be no requirement of independent jurisdiction. Rickey Land & Cattle Co. v. Miller & Lux, supra. The second, and more common situation is where the court, having embarked upon an issue, might reasonably be asked, as a matter of convenience to the par-

5. In the light of this case it may be thought that the Advisory Committee's reason for suggesting the addition of the "property" provision to Rule 13 in 1946, see 28 U.S. C.A., may have been fear that the rule, as previously expressed, failed to provide for as full jurisdiction as had been formerly recognized in federal equity cases. The rights of the junior encumbrancer that were asserted to be in the Committee's mind do not strictly arise out of the original transaction or occurrence. Dunham v. Smith, 1929, 97 Fla. 386, 120 So. 761. At the same time it is clear that nothing in the rule was intended to confer general jurisdiction upon the court where it had not previously existed. F.R.Civ.P. 82; see Pettyjohn v. Pettyjohn, infra.

ties, to deal with the ramifications which readily lent themselves to contemporaneous solution, that is to say, to make a "complete determination of the matters already in litigation." Morgan's, etc., Co. v. Texas Central Ry., supra, 137 at 201, 11 S.Ct. at 70; City of Boston v. Boston Edison Co., supra. Although in these cases, too, the courts have not experienced jurisdictional doubts, we agree with the suggestion in Childress v. Cook, supra, that the very fact that cross-claims require no independent jurisdiction is reason for not allowing too broad a scope.

In the case at bar, had the alleged fund been deposited in court it would be appropriate to determine all issues affecting its ultimate disposition. But since it was not we agree with the court in Pettyjohn v. Pettyjohn, 8 Cir., 1951, 192 F.2d 322, that not only does Atlantic's claim clearly not arise out of the original transaction or occurrence, but the court's possession of "property" is too slight of itself to justify its entertainment.[6]

There is an additional reason in the present case for refusing to entertain Atlantic's cross-claim. Its co-defendants, taxpayer's suppliers of labor and materials, possessed a special statutory status. Under then Mass.G.L. (Ter.Ed.) c. 30, § 39, the funds due from the Commonwealth, at least to the extent of the "retained percentages," were to be sought in a special proceeding in the superior court from which general creditors were excluded. J. J. Struzziery Co. v. A. V. Taurasi Co., 1960, 340 Mass. 481, 165 N. E.2d 120, supra, n. 1. For the district court to entertain Atlantic's cross-claim would work serious interference with this statutory scheme. Atlantic's argument based on the fact that it was excluded from the state court does not suggest to us that it should be admitted here, but just the reverse.

Judgment will be entered affirming the judgment of the District Court except that such judgment is modified to dismiss with prejudice the government's complaint insofar as it sought to declare rights in the funds superior to rights, if any, of appellant. Costs to Continental Casualty Co., only.

6. Pettyjohn v. Pettyjohn is not only on all fours with the facts at bar, but it is interesting to note that the writing judge was one particularly aware that appropriate affirmative relief to defendants does not require a separate jurisdictional basis. See Coastal Air Lines v. Dockery, 8 Cir., 1950, 180 F.2d 874; Home Ins. Co. of New York v. Trotter, 8 Cir., 130 F.2d 800, supra.