CHESAPEAKE BEACH RAILWAY COMPANY *v.* HUPP AUTOMATIC MAIL EXCHANGE COMPANY.

HUPP AUTOMATIC MAIL EXCHANGE COMPANY *v.* CHESAPEAKE BEACH RAILWAY COMPANY.

---

CONTRACT; INDEMNITY; SCOPE OF; PUBLIC POLICY; ULTRA VIRES; EVIDENCE; JUDGMENT RECORD; TERMINATION OF CONTRACT.

1. A liability for injury caused by the negligence of a railway company to a person on the track who had been invited there to remove certain blocks placed by a company which had a contract right to use the tracks for the purpose of some experimental tests and demonstrations of an automatic mail exchange system is within the losses contemplated by the contract whereby an indemnity was given to the railway company for any loss which it should sustain by reason of

being compelled to respond in damages for injuries to third persons which arise either directly or indirectly, or in any way arise or grow, out of the operations of the company making the experiments.

2. It is not against public policy to indemnify a railway company against liability for injury caused by its own negligence to persons on the track by permission in the course of experimental tests of an automatic mail exchange system which were permitted by the railway company under such provision for indemnity.

3. The presumption is that a contract of a corporation is not *ultra vires* in the absence of anything appearing to the contrary.

4. Evidence included in the record of a judgment in a case which an indemnitor had been called upon to defend or settle, where he failed to do either, is admissible against him in a subsequent suit.

5. A lease providing that it should terminate on a certain date upon the lessee's "giving sixty days' notice" is not terminated by its terms on the date specified if such notice was not given. (Distinguishing *United States use of District of Columbia* v. *Bayly*, 39 App. D. C. 105.)

Nos. 3139 and 3140. Submitted April 5, 1918. Decided May 27, 1918.

HEARING on cross appeals from a judgment of the Supreme Court of the District of Columbia in an action on a contract. One case *reversed* and the other *affirmed*.

The COURT in the opinion stated the facts as follows:

This is an appeal and cross appeal, and shall be disposed of in the order stated. We shall refer to the parties as the Chesapeake company, the Hupp company, and the Casualty company, respectively.

The Hupp company made a contract with the Chesapeake company, which was itself the lessee of another railway company called herein the Potomac company, whereby the Hupp company secured for a period of six months commencing in October, 1912, the right to use a portion of the tracks and other facilities of the Chesapeake company for "the purpose of demonstrating and making experimental tests of the Hupp Automatic Mail Exchange System," for which it agreed to pay $200 a month "irrespective of whether or not it used the prop-

erty." The contract also provided as follows: "The party of the first part further agrees to indemnify and save harmless the party of the second part for any and all loss, damages, and injuries which may be caused to or sustained by persons or property, either directly or indirectly, or which may in any way arise or grow out of the operations of said party of the first part under this agreement, including damage to the property of the party of the second part and injury to its employees; and said party of the first part further agrees at its own cost and expense to defend any claims, suits, or actions which may be brought or instituted against said party by reason [of] said operations, and agrees to pay any sums which may be required to settle any such claims, suits, or actions, and to satisfy any decree or judgment which may be rendered therein against said party of the second part."

From time to time the contract was extended, the last extension being from April 18, 1914, to January 31, 1916, with this proviso, however, "that if the lease under which the said party of the second part [the Chesapeake company] now occupies the track or part thereof described in said above-mentioned contract shall be terminated on the 31st day of January, 1915, this contract shall then terminate automatically upon the same date, without the necessity of any action or notice whatever upon the part of either party; and provided, further, that either party to said agreement may also terminate the same either upon the 31st day of January, 1915, or the 31st day of July, 1915, by giving to the other party thereto written notice of its intention to terminate the same at least thirty days before the date upon which the same is to be so terminated." The performance of this contract on the part of the Hupp company, with each extension thereof, was guaranteed by the Casualty company.

While a mail exchange station was being constructed for the use of the Hupp company under the direction of its superintendent, Harrity, one Gilmore was invited by the latter to come upon the track and remove some blacks from outside and between the rails which had been placed there by the Hupp company during the construction of the station. Gilmore accepted the invitation, and while removing the blocks was, it is

charged, struck by a locomotive engine and severely injured through the negligence of the Chesapeake company. He sued that company and recovered a judgment, which was paid by it. This suit was then brought by the Chesapeake company to recover from the Hupp and Casualty companies on the contract the sum thus paid. The trial court held there was no liability, and directed a verdict in favor of the defendants on the footing that the injury to Gilmore was not an occurrence contemplated by the terms of the contract.

*Mr. Frederic D. McKenney, Mr. John S. Flannery,* and *Mr. G. Bowdoin Craighill,* for the Chesapeake Beach Railway Company:

This is an action for *indemnity,* which "springs from contract express or implied." 22 Cyc. 80; 14 R. C. L. 43.

Cases construing the ordinary and familiar policy of indemnity insurance illustrate the rights and liabilities of the parties to an *express* contract of indemnity (*B. Roth Tool Co.* v. *New Amsterdam Casualty Co.* 161 Fed. 709), and the rights of the respective parties under an *implied* contract of indemnity are quite fully defined in *Washington Gaslight Co.* v. *District of Columbia,* 161 U. S. 316.

There may also be an express contract establishing a certain relationship between the parties, and the right to indemnity may depend upon an implied contract arising out of such relationship. This is illustrated by the very recent decision of the Supreme Court of the United States in *George A. Fuller Co.* v. *Otis Elevator Co.* decided Jan. 14, 1918.

With the invitation from the Hupp company, lessee of the railway company, Gilmore became a licensee or invitee, towards whom the railway company was bound to exercise a much higher degree of care. *Tutt* v. *Illinois C. R. Co.* 104 Fed. 741; *Glaria* v. *Railway Co.* 30 App. D. C. 559.

The doctrine which forbids a recovery by one tort-feasor of contribution from his joint-tort-feasors has no application to the present case. *Union Stock Yards Co.* v. *Chicago, &c. R. R. Co.* 196 U. S. 217, 224.

The fact that the judgment in the Gilmore Case was bottomed upon the charge of negligence on the part of the railway company does not prevent the railway company from recovering over from the Hupp company and its surety, where they are primarily responsible. *Baltimore & O. R. Co.* v. *Howard County,* 111 Md. 176.

*Mr. George Francis Williams,* for the Hupp Automatic Mail Exchange Company:

The burden was upon the railway company to establish by a preponderance of proof that the injury to Gilmore, which formed the basis of his recovery against it, arose or grew out of the operations of the Hupp company under the agreement of April 19, 1912, as extended.

Appellant failed to make a showing which would have justified the court in submitting the case to the jury as to the Gilmore claim. The injury to Gilmore was caused by the negligence of an employee or servant of the defendant, and it is established by well-considered cases that a contract of indemnity will not be construed to give a cause of action to the indemnitee against the indemnitor in cases in which the injury for which the indemnitee has been obliged to pay was caused by the negligence of its own employee or servant, unless the contract of indemnity itself is so expressed as to place such liability upon the indemnitor. *San Antonio & A. Pass R. Co.* v. *Adams,* 6 Tex. Civ. App. 102; *St. Louis & S. W. R. Co.* v. *Arnold,* 32 Tex. Civ. App. 272, 74 S. W. 819; *Manhattan R. Co.* v. *Cornell,* 54 Hun, 292, 7 N. Y. Supp. 557; *Morton* v. *Union Traction Co.* 20 Pa. Super. Ct. 325; *Boston R. Co.* v. *Brackett,* 71 N. H. 494; *Woodbury* v. *Post,* 158 Mass. 140; 22 Cyc. 85 and 87, article Indemnity; *Indianapolis, etc. R. Co.* v. *Brownenburg,* 32 Ind. 199; *Mitchell* v. *Southern R. Co.* 24 Ky. L. Rep. 2388, 74 S. W. 216.

The railway company's lease terminated on January 31, 1915, thereby automatically terminating the agreement of April 18, 1914.

The renewal agreement was a new lease for a new term.

*United States use of D. C.* v. *Bayly,* 39 App. D. C. 105; *Morse* v. *Brainerd,* 42 App. D. C. 450.

The provision in the agreement of April 18, 1914, that that agreement should automatically terminate should the lease be terminated on January 31, 1915, was inserted by the railway company and is to be given full effect against it. *United States use of District of Columbia* v. *Bayly, supra,* and *New York L. Ins. Co.* v. *Statham,* 93 U. S. 24.

*Mr. William C. Prentiss* for the Maryland Casualty Company.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

The provisions of the contract with respect to the responsibility of the Hupp company and its surety to the Chesapeake company for loss arising out of the operations of the Hupp company are quite sweeping in what they comprehend. They mean, as we understand them, that the Hupp and Casualty companies were to indemnify the Chesapeake company for any loss which it should sustain by reason of being compelled to respond in damages for injuries to third parties arising either directly or indirectly out of the operations of the Hupp company, or which should in any wise grow out of those operations. Gilmore's presence on the track was due to them. He was there by invitation of the Hupp company to remove blocks which were placed upon the track in the course of its work. His injury befell him while he was performing a service for the Hupp company, and it arose at least indirectly out of the operations of that company; therefore it produced one of the losses contemplated by the contract.

If we admit that an indemnitor is not liable for the negligence of the indemnitee except where it is expressly provided that it should be, that would not aid the position of the Hupp company and its surety, because as we construe the contract before us it in effect expressly provides for injuries flowing from negligence. Loss might come to the Chesapeake company through its own negligence, as well as otherwise. The presence

on or near the track of the Hupp company's employees, and of others, such as Gilmore, brought there by its invitation, necessarily increased the chances of accident for which the Chesapeake company might be responsible. It was natural that the latter should desire to protect itself against loss on this account, even where it was caused by the negligence of its own employees. If, as contended, it was the intention of the parties to the contract that it should be limited to "liability for accidents for which the Hupp company's operations were responsible," it would have been easy to have said so instead of using the all-embracing language which we have been considering.

In *Woodbury* v. *Post,* 158 Mass. 140, 144, 33 N. E. 86, cited by appellees, the plaintiffs sued upon a contract of indemnity which provided that the indemnitors should be liable for any injury "occasioned to any person or property" although it should result from the negligence of certain described employees of the indemnitees. The plaintiffs, indemnitees, alleged that the injury for which they were compelled to respond in damages was the result of negligence on their part, but, the allegations disclosed, of a different character from that mentioned in the contract. The indemnitors, defendants, contended that they were not liable for any act of negligence except the negligence of the employees specifically mentioned. The court refused to take this view, saying that as it construed the contract they were liable for "any damage or expense resulting to them [the indemnitees] by reason of any injury to person or property," and hence for the acts of negligence set out in the plaintiff's petition. The decision was put upon the ground that, since the defendants agreed to be liable for damage resulting from *any* injury, they were liable for one arising out of negligence as well as from any other cause. The other cases brought to our attention, like the Massachusetts decision, turn upon the construction of the particular language of the contract in each case. In none have we found anything in conflict with the conclusion we have reached.

There is no merit in the suggestion, presented but not argued, that if the contract is construed so as to cover acts of negligence by the Chesapeake company, then it is against public policy

and *ultra vires* of the Hupp company. With respect to the first, the negligence involved does not relate to the Chesapeake company's duty as a common carrier; and concerning the second, there is nothing in the record upon which to predicate it. The presumption is, nothing appearing to the contrary, that the company in making the contract acted within its power. *Ohio & M. R. Co.* v. *McCarthy,* 96 U. S. 258, 267, 24 L. ed. 693, 695; *Gist* v. *Drakely,* 2 Gill. 330, 359, 41 Am. Dec. 426.

For the purpose of proving the liability of the Chesapeake company for the injury sustained by Gilmore, that company introduced in evidence the pleadings and judgment in the Gilmore Case, and then tendered the testimony given by Gilmore in that case. The latter was refused. We think it should have been accepted because it was material for the purpose of showing what the judgment comprehended and what was concluded by it. "The elementary rule is," says the Supreme Court of the United States, "that for the purpose of ascertaining the subject-matter of a controversy, and fixing the scope of the thing adjudged, the entire record, including the testimony offered in the suit, may be examined." *Washington Gaslight Co.* v. *District of Columbia,* 161 U. S. 329, 40 L. ed. 719, 16 Sup. Ct. Rep. 564, and cases there cited. But the Chesapeake company was permitted to call Gilmore and have him state what he had testified to in the former case, thus supplying in another way, but not the better one, what it had attempted to prove by the record.

This testimony, taken in connection with the pleadings, disclosed, without contradiction, what the judgment rested on and hence what was finally resolved by it, namely, that Gilmore came upon the track at the invitation of the Hupp company to remove blocks, and while there was injured through the negligence of the Chesapeake company. For a loss happening under those circumstances, as we have seen, the Hupp company and its surety are liable to the Chesapeake company on their contract. If they had been parties to the suit, they would not of course be permitted to question the judgment or any of the things determined by it. But they were not parties; yet may they not be bound by it?

In the pleas of the Hupp company it is admitted that the Chesapeake company duly notified the former of the institution of the Gilmore suit, and called upon it to defend or settle the same; and that it failed to do either.   The record further shows that the pleas of the Casualty company were substantially the same as those of the Hupp company.   Consequently both companies admit due notice to appear in the Gilmore suit and defend or settle.   It is the law that where one person who has a right to recover over "is sued, the judgment rendered against him is conclusive upon the person liable over, provided notice be given to the latter, and full opportunity be afforded him to defend the action."   *Washington Gaslight Co.* v. *District of Columbia, supra.*   All these conditions were complied with in the Gilmore Case, and hence the Hupp company and its surety are bound by the judgment just as much as if they were parties thereto.   It was conceded on the record, at least there was no contradiction of it, that the Chesapeake company was compelled to pay on account of the Gilmore Case $686.64.   For this sum, with interest at 6 per cent from April 5, 1915, the date of the payment, the court should have instructed a verdict in favor of the Chesapeake company against the Hupp and Casualty companies.

We now come to consider the cross appeal.   It arises out of the same contract.   As we have seen, the last extension of this contract ran from April 18, 1914, to January 31, 1916.   But it was provided therein that if the lease from the Potomac company under which the Chesapeake company occupied the track should be terminated on the 31st day of· January, 1915, then this contract should also terminate on that date.   It was also provided that if it did not then terminate for the reason just given, either party would have the right to bring the contract to an end on the 31st day of July, 1915, by giving notice of its intention to do so.

The lease between the Chesapeake company and the Potomac company provided that it should terminate on January 31, 1915, upon the latter "giving sixty days' notice" to the former. This notice was not given, and the Chesapeake company con-

tinued to occupy and use the tracks during the period covered by this litigation.

Pursuant to its right under the last extension, the Hupp company gave due notice that it would terminate its contract on July 31, 1915. No rent was paid by it for the period between February 15, 1915, and that date. For the amount of this rent the court directed a verdict in favor of the Chesapeake company.

The Hupp company and the Casualty company contend that the lease between the Potomac company and the Chesapeake company terminated by its terms on January 31, 1915, and that, because of this, the contract between the Hupp company and the Chesapeake company also terminated on the same date. Consequently, they assert, they are not liable for rent after that date, albeit they used the property, and hence that the judgment rendered against them is erroneous.

This is a misapprehension of the terms of the contract and the lease. The contract does not say that it shall come to an end if the lease with the Potomac company shall terminate on January 31st, but instead declares that such shall be the result if the lease "shall be terminated" on that day. This contemplates future action with respect to the date on which the lease was to end. That action was not taken, and so the lease continued in force during the entire period for which the Chesapeake company sought to recover rent. The contract then between the Hupp company and the Chesapeake company did not expire until July 31, 1915, and the former company was liable for rent during that period.

There is no analogy between this case and *United States use of District of Columbia* v. *Bayly,* 39 App. D. C. 105, 41 L.R.A.(N.S.) 422. In that case the indemnitor secured the performance of a contract for a period of two years, which provided that the District of Columbia should have the right at the end of that period to renew the contract if it desired. The District sought to exercise this option, and asserted that it had renewed the contract, albeit Bayly refused to recognize the renewal and declined to do any work under it. Proceeding upon the assumption that the contract had been renewed, the

District sued Bayly and the surety company for damages arising from its breach. But this court very properly held that since the default complained of did not occur during the period of the original contract, and because the new one constituted "a separate and distinct contract for a period of time covered by such renewal," the surety company was not liable. While there was a renewal in the instant case, the Casualty company expressly agreed to be responsible for it. This clearly differentiates it from the Bayly Case.

It follows that so much of the judgment as is appealed from by the Chesapeake Beach Railway Company must be reversed, with costs, with instructions to the lower court to grant a new trial in accordance with the views expressed in this opinion; and that so much of the judgment as is appealed from by the Hupp Automatic Mail Exchange Company, a Corporation, and the Maryland Casualty Company, a Corporation, must be affirmed with costs.

*No. 3139 reversed and new trial granted.*
*No. 3140 affirmed.*