## THE TOLEDO.

### No. 272.

Circuit Court of Appeals, Second Circuit.

July 26, 1941.

Writ of Certiorari Denied Nov. 24, 1941.

See —— U.S. ——, 62 S.Ct. 302, 86 L.Ed. ——.

Before SWAN, CHASE, and CLARK, Circuit Judges.

Bigham, Englar, Jones & Houston, of New York City (James W. Ryan, of New York City, of counsel), for appellant.

Haight, Griffin, Deming & Gardner, of New York City (John W. Griffin, Wharton Poor, and Stanley W: Schaefer, all of New York City, of counsel), for appellees.

SWAN, Circuit Judge.

This litigation arose out of an accident which befell the motorship Toledo while under time charter to the libellant. The charter party, which was on the Government-New York Produce Exchange form, contemplated a transatlantic voyage from United States ports north of Hatteras to continental European ports. The vessel was delivered to the charterer at Philadelphia on December 15, 1938. After taking on a partial cargo she proceeded to Chester, where additional cargo was obtained, and thence to New York, where the final cargo was to be laden. Upon arrival at New York on December 21st, an examination was made of the engines and a fracture of the No. 3 crankshaft web was discovered. The charterer· was immediately notified thereof and stopped the loading of cargo. The following day it was informed that repairs would require thirty days. In reply the charterer gave notice that hire would cease until the vessel was put in condition, as provided by clause 15 of the charter party. On the 24th the charterer suggested transshipment of the cargo but the captain did not accede to the suggestion. The cargo was not perishable. On January 5, 1939, the charterer cancelled the charter party, having in the meantime, between December 27th and 31st, discharged the cargo and sent it forward on other vessels. By its libel, filed on January 21, 1939, the charterer sought recovery in two capacities: (1) As time charterer, for breach of contract, and (2) as bailee and assignee of cargo for damages sustained by owners of cargo. The decree entered after a lengthy trial allowed a recovery of only part of the damages claimed under the first cause of action and nothing under the second.

The charter party contains a recital that hull machinery and equipment are "in a thoroughly efficient state", and a promise that on delivery the vessel shall be "tight, staunch, strong and in every way fitted for the service." There was no express provision that the warranty of seaworthiness shall be good only to the extent that due diligence can make it so, but there was an exception clause, Paragraph 16, reading as follows: " * * * The act of God, enemies, fire, restraint of Princes, Rulers and People, and all damages and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party always mutually excepted." The district judge ruled that under the charter party there was a warranty that the vessel was seaworthy when the charter was made on December 7, 1938 and when she was delivered on December 15th. He found from the evidence that she was not seaworthy at these times. Neither party questions these findings. The cause of her unseaworthiness was defective metal in the No. 3 crankshaft web. This defect was latent and could not have been discovered by the exercise of due diligence by the owners. Although the defect had existed from the time of manufacture and the process of fracture had already begun, the web did not break until shortly after she left Chester on December 20th. Such breaking in calm weather was held to be an accident to machinery within the exception contained in Paragraph 16. Accordingly Judge Campbell· ruled that the ship and its owners were relieved from liability despite the ship's unseaworthiness· at the date of making the charter party and the date of delivery of the vessel to the charterer.

The appellant contends that this ruling is contrary to the construction which the Supreme Court has placed on similar exception clauses. The Caledonia, 157 U.S. 124, 15 S.Ct. 537, 39 L.Ed. 644; The Carib Prince, 170 U.S. 655, 18 S.Ct. 753, 42 L. Ed. 1181. The appellees attempt to distinguish these cases on the ground taken by the district judge, namely, that there the warranty of seaworthiness was made by a common carrier while here it is the promise of a private carrier. It may well be doubted whether that distinction is significant when the question is the construction of a contract to determine whether the warranty of seaworthiness is modified by an exception of accidents to machinery which result from the preexisting unseaworthiness.

The obligation to furnish a seaworthy vessel is the same in each case. See The Edwin I. Morrison, 153 U.S. 199, 14 S.Ct. 823, 38 L.Ed. 688; The Addison E. Bullard, 2 Cir., 287 F. 674. While a private carrier is permitted to limit its obligation more broadly than a public carrier, the question presented is whether the language of an exception, not expressly referring to the warranty of seaworthiness, should be construed as a limitation of the warranty. The principles of construction discussed in The Caledonia, supra, would seem to be equally applicable when the warrantor is a private carrier. The appellees argue that the words "always" and "throughout this charter party" appearing in Paragraph 16, are broad enough to include the warranty of seaworthiness within the exception. But this question we need not decide, for in any event the libellant was awarded under the first cause of action all damages to which it was entitled.

■ Its main claim of damages was for the cost to it of discharging and transshipping cargo, although the letters and assignments obtained from the cargo owners expressly recognize that the expense of transshipment was for the cargo owner's account. The district court held that such expenses were not recoverable because the charterer was not liable to cargo owners for delay caused by a latent defect not discoverable by due diligence. The bills of lading governing the rights of cargo owners were signed and issued by the charterer for and on behalf of the master. They incorporated the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., which expressly exempts the carrier from liability for latent defects and for unseaworthiness "unless caused by want of due diligence." The theory of the charterer on this claim is that in transshipping the cargo it was mitigating the damages which the cargo owner would have against it; thereby reducing the claim it would have over in indemnity against the respondent. A claim for indemnity, however, requires that an actual liability be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity. Donald v. Guy, D.C., E.D.Va., 127 F. 228; Dunn v. Uvalde Asphalt Paving Co., 175 N.Y. 214, 218, 67 N.E. 439; Colonial Motor Coach Corp. v. New York Central R. R., 131 Misc. 891, 901, 228 N.Y.S. 508. In failing to establish a lack of due diligence the charterer failed to establish a right to indemnity based on an actual liability on its part. The court below was clearly correct in denying this claim for damages on the ground that the charterer acted as a volunteer.

■ The libel did not claim any loss of freight. On the cargo shipped freight had been prepaid and was to "be retained by the carrier, cargo lost or not lost"; and in the event the goods were forwarded on another vessel, the cost of forwarding was payable by the owners or consignees of the goods. At the trial, however, the libellant attempted to prove for lost freight on forty-five carloads of apples which it claims could have been carried had the ship been able to sail as scheduled. These apples were never delivered for loading nor was any written contract made with respect to them. There was evidence that a "booking" had been made by telephone conversation with a broker for the shipment of such apples. Such bookings are subject to cancellation. The charterer did not know the names of the shippers of the apples nor where they were nor when they would arrive, except for a hearsay statement that fifteen carloads were at some rail terminus in New York. We think the district judge was right in holding the proof insufficient.

■ The remaining claim was for the return of charter hire and the value of fuel. The libellant was awarded a decree for unearned hire and unused bunkers as of the time of breakdown. Limitation of damages to this amount was correct. As stated in Work v. Leathers, 97 U.S. 379, 380, 24 L.Ed. 1012, "the stipulation of seaworthiness is not so far a condition precedent that the hirer is not liable in such case for any of the charter-money. If he uses her, he must pay for the use to the extent to which it goes."

■ In the second cause of action the libellant asserts rights "in tort" as "bailee and as agent of the cargo". At the trial assignments from the cargo owners were introduced. Whether as agent or as assignee it is obvious that the libellant's rights are no greater than those of the cargo owners'. Their rights are governed by the bills of lading which, as already stated, incorporated the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 and excluded recovery for latent defects or for unseaworthiness unless the ship owners

failed to exercise due diligence. The finding that there was no such failure is not questioned. Whether there was a breach of warranty contained in the charter party is wholly immaterial in considering this cause of action. The shippers' contracts must be found in the bills of lading and the shipowners committed no breach of those contracts.

Decree affirmed.