MOSES–ECCO COMPANY, Inc.,
Appellant,

v.

ROSCOE–AJAX CORPORATION,
Appellee.

ROSCOE–AJAX CORPORATION,
Appellant,

v.

Charles DETWILER, Appellee.

Nos. 16960, 16970.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 2, 1962.

Decided May 16, 1963.

Petition for Rehearing En Banc Denied En Banc July 9, 1963.

Petition for Rehearing by the Division Denied July 9, 1963.

1. Present counsel, appointed by this court, was not appellant's counsel in the District Court.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. John A. Beck, Washington, D. C., for appellee in No. 16960 and appellant in No. 16970.

Mr. John F. Mahoney, Jr., Washington, D. C., with whom Messrs. Charles E. Pledger, Jr., Justin L. Edgerton, and R. Harrison Pledger, Jr., Washington, D. C., were on the brief for appellant in No. 16960 and appellee in No. 16970.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and WILBUR K. MILLER, Circuit Judge.

BAZELON, Chief Judge.

These consolidated appeals involve third-party complaints of Roscoe-Ajax Corporation, the general contractor for certain construction in the District of Columbia, against Moses-Ecco Company, Inc., its subcontractor for concrete work, and the subcontractor's superintendent, Charles Detwiler.

The main action was brought against Roscoe-Ajax in March 1959 by George W. Williamson, an employee of Moses-Ecco, and his wife. They alleged that, as a result of the negligence of Roscoe-Ajax in failing properly to install and maintain certain guard rails, Williamson fell five and one-half stories and sustained serious injuries. Roscoe-Ajax promptly filed the present third-party complaint under Rule 14 of the Federal Rules of Civil Procedure against Moses-Ecco and Detwiler for all sums which might be adjudged against Roscoe-Ajax in the main action.

The claim against Moses-Ecco was based upon an indemnification provision in the subcontract which we describe later. The claim against Detwiler for indemnification or contribution was based on an allegation that Williamson's injuries were caused solely by the negligence of Detwiler or jointly by Detwiler and Roscoe-Ajax.

Two jury trials of the main action were commenced. In the first, after the jury had returned a verdict of $120,000 against Roscoe-Ajax, the trial judge declared a mistrial because of prejudicial remarks in plaintiffs' closing argument to the jury. Hence, the third-party complaint was not reached. At the second trial, and near its completion, plaintiffs and defendant agreed to a settlement of the main action under which a consent judgment of $45,000 was entered in favor of plaintiffs.

Thereafter, in a trial of the third-party action, without a jury, the court entered judgment in favor of Roscoe-Ajax against Moses-Ecco for $45,000 plus costs and expenses and attorneys' fees incurred in defending against plaintiffs' claim; and it dismissed the third-party complaint against Detwiler. These consolidated appeals followed.

Moses-Ecco's main contention is that the indemnification provision of the subcontract lacks the positiveness which the law requires to indemnify Roscoe-Ajax for its own affirmative negligence. That provision reads:

"The Subcontractor [Moses-Ecco] agrees in the performance of this contract * * * that he will at all times indemnify and save harmless the Owner and the Contractor [Roscoe-Ajax] against any loss, because of injury or damage to persons or property arising or resulting from the performance of this contract, including any and all loss, cost, damage or expense which the Owner and/or Contractor may sustain or incur on account of any claim, demand or suit made or brought against them or either of them by or on behalf of any employee of [Moses-Ecco] * * *."

Losses incurred by Roscoe-Ajax through its own negligence are not specifically included. And Moses-Ecco urges here, as it did below, that no intention to include such losses "is otherwise clearly and unequivocally revealed."

We accept the principle that where, as here, the agreement does not specifically refer to losses incurred by the indemnitee's own negligence, the intent to cover such losses must otherwise plainly appear from the agreement. Maiatico v. Hot Shoppes, Inc., 109 U.S.App.D.C. 310,

287 F.2d 349 (1961). "No particular form or words are needed but the intent to waive negligence must be clear." Maiatico v. Hot Shoppes, Inc., supra; and see General Acc. Fire & Life Assur. Corp., Ltd., v. Smith & Oby Co., 272 F.2d 581, 77 A.L.R.2d 1134 (6th Cir. 1959).

The District Court concluded that the language of the indemnification agreement in the present case was so broad and sweeping as to plainly reveal an intent to encompass losses incurred in whole or in part by the negligence of the indemnitee. In reaching this conclusion, the court relied upon Chesapeake Beach R. Co. v. Hupp Automatic Mail Exchange Co., 48 App.D.C. 123 (1918); Princemont Construction Corp. v. Baltimore & O. R. Co., 131 A.2d 877 (D.C. Mun.Ct.App.1947); and Atlantic Coast Line R. Co. v. Robertson, 214 F.2d 746 (4th Cir. 1954) (citing cases). We think the view of the District Court is correct.[1]

It is difficult to conceive of any phraseology broader than Moses-Ecco's agreement to indemnify Roscoe-Ajax against "any and all loss, cost, damage, or expense * * * on account of any claim, demand or suit * * * by or on behalf of any employee of [Moses-Ecco] * *." Since the parties specified that "all" losses on "any" claims included those of Moses-Ecco's employees, we think further specification would be superfluous and ritualistic. Moreover, it would appear that no valid claim by an employee of Moses-Ecco could arise against Roscoe-Ajax except through Roscoe-Ajax's own negligence. Consequently to exclude losses caused by Roscoe-Ajax's negligence would deprive that part of the clause which refers to the claims by employees of Moses-Ecco against Roscoe-Ajax of virtually the only meaning it can possibly have. See Rice v. Pennsylvania R. Co., 202 F.2d 861 (2d Cir. 1953); cf. Farrell v. Eastern Bridge & Structural Co., 291 Mass. 323, 197 N.E. 68 (1935).[2]

■ An additional argument advanced by Moses-Ecco is that in the claim over for indemnification, Roscoe-Ajax had the burden of proving that it had suffered an "actual liability," and that since the issue of Roscoe-Ajax's liability to plaintiffs was not adjudicated in either the main action or the third-party action, indemnification will not lie for the payment in settlement of plaintiffs' claim. This position is apparently taken on the view that a settlement may not be deemed to reflect an "actual liability" and that they are somehow mutually exclusive. Support for this view is rested on the fol-

1. Maiatico v. Hot Shoppes, Inc., supra, is not to the contrary. There the issue was whether the landlord's covenant to repair fire damages promptly and at his own expense constituted a waiver by the landlord of his claim against the tenant for fire damages caused by the tenant's negligence. Our holding that the covenant did not spell out an intent to exculpate the tenant from the legal consequences of his own negligence turned largely upon considerations peculiar to the relationship of landlord-tenant, and particularly upon the fact that "[t]he parties were not contracting with respect to any subject except the matter of who was to take the steps necessary to render the leased premises usable [after a fire]." In the present case the parties were contracting with specific reference to indemnification and hence the issue is whether exculpation is spelled out in an indemnification clause. Though governed by the same general principles of law, this is quite different from the issue whether exculpation is spelled out in a covenant to repair.

2. Moses-Ecco relies heavily on Batson-Cook Co. v. Industrial Steel Erectors, 257 F.2d 410 (5th Cir. 1958), wherein the court construed a broad indemnification clause not to include recovery for losses caused by the general contractor-indemnitee's own negligence. But the clause in that case did not contain specific reference to claims brought by employees of the subcontractor-indemnitor and as the court pointed out, there were many situations other than negligence of the indemnitee to which the clause might apply. 257 F.2d at 413–414.

To the extent that the Batson-Cook case may appear to require the use of special legal terms such as "fault," "negligence" or "liability," we decline to follow it. Maiatico v. Hot Shoppes, Inc., supra; General Acc. Fire & Life Assur. Corp., Ltd. v. Smith & Oby Co.. supra.

lowing language of the Court of Appeals for the Second Circuit:

"A claim for indemnity * * * requires that an actual liability be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity." [The Toledo, 122 F.2d 255, 257 (2d Cir.), cert. denied Isbrandtsen-Moller Co. v. The Toledo, 314 U.S. 689, 62 S.Ct. 302, 86 L.Ed. 551 (1941).]

We think, however, that this must be read to mean only that, if an indemnitor challenges a settlement as imprudent, the indemnitee must justify it as prudent. This meaning is supported by a very recent decision of the Second Circuit recognizing that recovery by an indemnitee is not precluded simply because he settled the main claim rather than litigate it to final judgment:

"[W]hen * * * the shipowner defendant [indemnitee] settles before judgment with the longshoreman plaintiff the stevedore [indemnitor] still may be liable over to the shipowner on the stevedore's contractual obligation of indemnification. [Cites omitted.] A contrary result that would require the pursuit of the action to a judgment would conflict with the policy, which pervades all areas of the law, of encouraging settlement wherever it is possible. In cases in which the main action has been so settled, it is of course incumbent upon the court which entertains the claim for indemnity to determine before requiring the stevedore to indemnify the shipowner whether it was reasonable for the shipowner to have entered into the settlement." [Paliaga v. Luckenbach Steamship Co., 301 F.2d 403, 409–410 (2d Cir. 1962) (Citing cases.)]

And this accords with Justice Holmes' statement that "a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution." St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 182, 26 S.Ct. 400, 50 L.Ed. 712 (1906). Moreover, the parties did not contract to exclude indemnification for settlement. On the contrary they included indemnification for loss *"on account of any claim demand or suit * * *."* (Emphasis supplied.) This clearly encompasses settlements and is not limited to litigated judgments.

It follows that Roscoe-Ajax did not lose its contract right to indemnification simply because it settled plaintiffs' claim. And in the trial of the claim over for indemnification, there was no need for an adjudication of Roscoe-Ajax's liability to plaintiffs because the issue before the trial judge was whether Roscoe-Ajax was reasonable and prudent in settling, not whether it had been negligent and was therefore legally liable to plaintiffs.

■■■ Although Moses-Ecco says in one breath that "the reasonableness of the settlement is not in dispute * * *" it says in the next breath that indemnification will not lie because Roscoe-Ajax abandoned certain defenses to plaintiffs' claim. We lay aside this apparent inconsistency and discuss the merits of the later statement. The main defense to which Moses-Ecco refers is that plaintiffs' exclusive remedy was to seek benefits under the District of Columbia Workmen's Compensation Act, D.C.Code § 36–501 et seq. (1961),[3] and that Roscoe-Ajax was not a "third person" within the meaning of the Act, 33 U.S.C. §§ 904, 905, 933 (Supp. III, 1962), against whom plaintiffs could maintain a common-law action for damages. It appears, however, that this court has never decided whether a general contractor is a "third person" who can be sued at common law by an employee of a subcon-

3. This provision makes the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1958), applicable in the District of Columbia.

tractor whose employees are covered by the District of Columbia Workmen's Compensation Act; that question has been subject to differing resolutions in other jurisdictions with similar statutes. See Jonathan Woodner Co. v. Mather, 93 U.S.App.D.C. 234, 210 F.2d 868, cert. denied, 348 U.S. 824, 75 S.Ct. 39, 99 L.Ed. 650 (1954); Smith v. John B. Kelly, Inc., 107 U.S.App.D.C. 140, 275 F.2d 169 (1960) (concurring opinion of Washington, J.); and authorities cited therein.

Thus, it may be said that plaintiffs' claim rested on a question of law open and debatable in this jurisdiction. Ordinarily a settlement between the parties in such cases is motivated by a mutual desire to avoid the expense and risks of litigation. There is no allegation that a different motive prevailed here. In these circumstances a settlement payment, made when the law was uncertain, cannot be successfully attacked on the basis of any subsequent resolution of the uncertainty. Otherwise the public policy of encouraging settlements[4] would be seriously undermined.

 Finally, Moses-Ecco asserts that the court below erred in allowing attorneys' fees as part of Roscoe-Ajax's recovery. It is of course true that attorneys' fees may not be taxed to either party unless provided for either by law or by agreement between the parties. D.C.Code § 11–1501 (1961); Rosden v. Leuthold, 107 U.S.App.D.C. 89, 274 F.2d 747 (1960). We think that the agreement of Moses-Ecco to indemnify Roscoe-Ajax for "any and all loss, cost, damage or expense" clearly includes attorneys' fees. Cf. General Acc. Fire & Life Assur. Corp., Ltd. v. Smith & Oby Co.,

supra; B & G Electric Company v. G. E. Bass & Company, 252 F.2d 698 (5th Cir. 1958).

Affirmed.[5]

WILBUR K. MILLER, Circuit Judge (dissenting).

The Williamsons' suit, which Roscoe-Ajax settled during the progress of the second trial, was based on the alleged sole, independent negligence of the latter. The majority hold—erroneously, I think—that Moses-Ecco had indemnified Roscoe-Ajax against loss caused by its own negligence. But that mistaken conclusion does not require or justify the award of indemnity against Moses-Ecco, as Roscoe-Ajax did not claim or prove that its negligence produced Williamson's injuries, but steadfastly denied guilt of negligence. Nor was its negligence judicially found, either in the main or the indemnity action. In those circumstances, it must be concluded, I think, that Roscoe-Ajax settled voluntarily, without any legal compulsion whatever and that it is not entitled to indemnity.

I shall therefore first discuss Roscoe-Ajax's plain failure to show entitlement to indemnity even under the erroneous holding that it was protected from liability arising from its own negligence. Later in this dissent, I shall demonstrate, at least to my own satisfaction, that the contract did not indemnify Roscoe-Ajax against loss occasioned by its own negligence and that therefore it could not recover under the indemnity agreement, even if Roscoe-Ajax's negligence had been shown or judicially found.

On November 24, 1958, Roscoe-Ajax Corporation, the general contractor for the construction of an addition to the Shoreham Hotel, engaged Moses-Ecco

4. Uline v. Uline, 92 U.S.App.D.C. 281, 205 F.2d 870 (1953); Clark v. Barlow, 74 App.D.C. 328, 122 F.2d 337, cert. denied, 314 U.S. 675, 62 S.Ct. 188, 86 L.Ed. 540 (1951) (citing cases); Rommel v. West American Ins. Co., 158 A.2d 683 (D.C. Mun.Ct.App.1960), and authorities cited therein; 11 Am.Jur. Compromise and Settlement §§ 5, 6, 7, 31 (1937); cf.

Martello v. Hawley, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962); McKenna v. Austin, 77 U.S.App.D.C. 228, 234, 134 F.2d 659, 665, 148 A.L.R. 1253 (1943).

5. We do not reach Roscoe-Ajax's appeal from the judgment in favor of Detwiler since Roscoe-Ajax has advised us that it wishes to pursue that appeal only if we reverse its judgment against Moses-Ecco.

Company as subcontractor for the concrete work. While construction was in progress, George W. Williamson, a laborer employed by Moses-Ecco, fell about five and one-half stories down an open chimney shaft to the concrete floor of the basement, and suffered severe permanent injuries.

On June 22, 1959, Williamson and his wife sued Roscoe-Ajax, charging it with negligent installation and maintenance of the railing on the landing above the fifth floor from which Williamson fell. Roscoe-Ajax filed a third-party complaint against Moses-Ecco seeking indemnification for all sums which might be adjudged against it, based on the following provision of the subcontract:

"7. The Subcontractor agrees in the performance of this contract to observe and comply with all laws, ordinances and regulations of all constituted authorities relating to the manner of doing the work under this contract or to the materials supplied therein, and shall also provide and maintain the necessary protection to his employees, other employees, and the public; that he will at all times indemnify and save harmless the Owner and the Contractor against any loss, because of injury or damage to persons or property arising or resulting from the performance of this contract, including any and all loss, cost, damage or expense which the Owner and/or Contractor may sustain or incur on account of any claim, demand or suit made or brought against them or either of them by or on behalf of any employee of the Subcontractor, or by or on behalf of any person injured by the Subcontractor, his

servants, agents or employees, or in case of any claim being made or action instituted for any act or omission of the Subcontractor resulting in injury or damage to persons or property, and a proper and sufficient amount of the contract price may be retained by the Contractor as his indemnity pending the determination, settlement or adjustment of any such claim or suit."

Roscoe-Ajax also made one Detwiler, Moses-Ecco's superintendent, a third-party defendant, alleging his negligence caused the accident. Thereafter, Roscoe-Ajax filed an answer to the complaint in which it denied negligence.

The first trial of the Williamsons' case against Roscoe-Ajax ended October 18, 1961, with a jury verdict in their favor in the total sum of $120,000. But, because of improper argument to the jury, the trial judge declared a mistrial, as a result of which the third-party action was not then tried.

The Williamsons' suit against Roscoe-Ajax came on for trial a second time on December 5, 1961. At the conclusion of the plaintiffs' evidence, Roscoe-Ajax moved for a directed verdict on the grounds (a) that the plaintiffs' exclusive remedy was under the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927,[1] which has been made applicable to the District of Columbia,[2] and (b) *that a prima facie case of negligence had not been made out.* The court reserved rulings on these points and Roscoe-Ajax began its presentation of evidence, during the course of which a settlement was reached pursuant to which a consent judgment was entered against Roscoe-Ajax in the amount of $45,000.[3]

---

1. 44 Stat. 1424, 33 U.S.C. § 901 et seq.

2. 45 Stat. 600, § 36–501, D.C.Code (1961).

3. Before agreeing to the consent judgment, Roscoe-Ajax called upon Moses-Ecco to admit liability under the subcontract. Counsel for Moses-Ecco responded as follows:

"The third-party defendant denies any responsibility for any judgment or settlement which would be consummated in this case by virtue of the evidence that has thus been produced and the terms of the contract between the general contractor, Roscoe-Ajax Corporation and the third-party defendant, Moses-Ecco Company, Inc."

After an interval following the settlement, the third-party action came on for hearing on December 18, 1961. The general contract between the Shoreham Hotel and Roscoe-Ajax and the subcontract between Roscoe-Ajax and Moses-Ecco were received in evidence. In addition, a certificate from an insurance company that certain policies held by Moses-Ecco covered the Shoreham job, and a section of the District of Columbia Safety Standards, Rules and Regulations in regard to construction [4] were introduced by Roscoe-Ajax. There was no other evidence. Its attorney asked to be allowed a fee of $5,000 from Moses-Ecco.

The case was under advisement until February 12, 1962, when the District Court dismissed the third-party complaint as to Detwiler and awarded to Roscoe-Ajax judgment against Moses-Ecco for the sum of $46,033.67 plus attorney's fees and costs. Moses-Ecco appeals from this judgment and Roscoe-Ajax appeals from the dismissal of the third-party complaint against Detwiler.

I observe from the paragraph of the subcontract heretofore quoted that Moses-Ecco agreed to "at all times indemnify and save harmless the Owner [Shoreham Hotel] and the Contractor [Roscoe-Ajax] against any loss, because of injury or damage to persons or property arising or resulting from the performance of this contract * * *." The substance of this promise is to pay a loss which Shoreham or Roscoe-Ajax had been compelled to pay.[5] Obviously, Moses-Ecco did not agree to repay a gratuity but only that which was paid under compulsion. St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 182, 26 S.Ct. 400, 50 L.Ed. 712 (1906).

I agree with the Second Circuit's statement in The Toledo, 122 F.2d 255, 257, cert. denied Isbrandtsen-Moller Co. v. The Toledo, 314 U.S. 689, 62 S.Ct. 302, 86 L.Ed. 551 (1941):

"* * * A claim for indemnity, however, requires that an actual liability be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity. [Cases cited.] * * *"

Here, in settling with Williamson without its actionable negligence having been first judicially determined, Roscoe-Ajax took the risk of proving actual liability on its part as the basis of the right to indemnity.[6]

There had been no judicial determination of liability in the main action, and

4. Section 11-21010:
"Securely Placed and Fastened: (a) any material, equipment, tool or other object being used, handled, transported, stored or serving as a work place shall be so held, fastened, secured, placed or piled that it cannot fall, topple over, roll, sway, slide, otherwise move about or get beyond control in any manner to endanger employees or others."

5. Assuming for the discussion, without conceding, that the indemnity agreement protected an indemnitee from the consequences of its own independent negligence. This point will be considered later in this dissent.

6. The fact that the settlement was reached before the conclusion of the trial does not militate against Roscoe-Ajax's right to indemnity, for the Supreme Court has said, "[A] sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution." St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. at 182, 26 S.Ct. at 404. In that case, the settlement was made before the trial began. But the negligence of the indemnitee was unequivocally stated as a fact by the Eighth Circuit in certifying the legal questions which the Supreme Court was answering. It is thus clear that the statement just quoted was made by the Supreme Court with the knowledge that the indemnitee had been negligent, and was predicated on that fact. Thus the St. Louis Dressed Beef case does not relieve an indemnitee who settled when his negligence had not been established from proving his legal liability in an action to recover from the indemnitor.

there was no evidence of negligence at the trial of the third-party proceeding. So the only proof of its negligence which Roscoe-Ajax could point to in support of its claim to indemnity was such evidence to that effect as was introduced by the Williamsons at the trial of the main action; as will appear hereinafter, Roscoe-Ajax admits it could not rely upon that evidence in the trial of the third-party suit against Moses-Ecco, and maintains that a judicial holding in the main action that it was negligent, had one been made, would not have been *res judicata* in the action against Moses-Ecco.

Moreover, at the conclusion of the Williamsons' evidence, Roscoe-Ajax had moved for a directed verdict, claiming its negligence had not been shown, and the trial court was in such doubt that it reserved its ruling on the motion. Then, during the presentation of its own evidence, while the trial judge still had under advisement its motion for a directed verdict for failure of proof of negligence, and when it was still denying negligence, Roscoe-Ajax settled for $45,000. And in its brief on this appeal, protesting its innocence and asserting the settlement "should not be construed as an admission of negligence by it," Roscoe-Ajax said:

"THERE HAS BEEN NO JUDICIAL DETERMINATION THAT PLAINTIFF'S INJURIES WERE THE RESULT OF THE NEGLIGENCE OF ROSCOE-AJAX.

"Roscoe-Ajax emphatically denied that it was negligent as alleged in the complaint. The claims of the plaintiff were vigorously defended through one trial and until near the end of the second trial. The evidence on how the injury occurred was sharply conflicting. Indeed, the Trial Judge indicated some doubt as to the sufficiency of the plaintiff's evidence by taking under advisement defendant's motion for a directed verdict at the close of plaintiff's evidence.

"The settlement of plaintiff's claims by Roscoe-Ajax after renew-ing its demand upon Moses-Ecco to assume the defense as required by the provisions of the subcontract, should not be construed as an admission of negligence by it. * * "

Thus, although its negligence was not found as a fact in the principal action and was neither alleged nor proved in the third-party proceeding, and although it insisted it was not negligent, Roscoe-Ajax seeks indemnity for settling a suit based on its negligence, and at the same time contends the settlement should not be construed as an admission of negligence. This amounts to a claim of indemnity for a voluntary payment.

Curiously enough, Roscoe-Ajax complains in its brief that "Moses-Ecco did not introduce any evidence of the negligence of Roscoe-Ajax at the trial on the third-party complaint." It would have been passing strange if Moses-Ecco had done so even if it could have done it, for that would have amounted to supplying, to its own detriment, the insufficiency of the proof in Roscoe-Ajax's third-party action against it. It was incumbent upon Roscoe-Ajax to introduce or to point to evidence of its own negligence in order to show it acted under compulsion in settling with the Williamsons. Instead of introducing such evidence, or even trying to rely on the Williamsons' proof, Roscoe-Ajax argues to the contrary. I quote the following from its brief:

" * * * Assuming that the trial judge could make a finding of negligence on the part of Roscoe-Ajax from the evidence presented in the trial on the complaint * * * the memorandum opinion of the trial judge contains no such finding. Even in the presence of an assumption or finding that Roscoe-Ajax was negligent in the trial on the complaint, such an assumption or finding would not be *res judicata* and binding upon the parties in the trial on the third-party complaint. * * "

These statements seem to be a clear admission by the appellee that the trial court erred in holding Moses-Ecco liable

for indemnity. To recapitulate: Roscoe-Ajax did nothing at the trial of the third-party action to carry the burden of showing its own negligence in order to show the settlement was made under compulsion; and, as shown in the above quotation, it agrees that in the third-party action against Moses-Ecco it could not rely on the Williamsons' evidence of its negligence which was adduced at the main trial. Anyway, as heretofore pointed out, Roscoe-Ajax stoutly insisted that evidence was insufficient, especially in view of the fact that the trial judge never did deny its motion for a directed verdict on that ground. In these circumstances, I am constrained to conclude that nothing in the record indicates the settlement was anything more than a voluntary and gratuitous payment. To hold that Moses-Ecco must indemnify Roscoe-Ajax for loss due to the latter's negligence when that negligence has not been shown is just as illogical as to hold that an insurance company must pay a claim for fire loss before it has been shown that a fire actually occurred.

In attempting to avoid the effect of the Second Circuit's The Toledo case,[7] from which I have heretofore cited the following:

"* * * A claim for indemnity, however, requires that an actual liability be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity. [Cases cited.] * * *"

the majority say:

"* * * We think, however, that this must be read to mean only that, if an indemnitor challenges a settlement as imprudent, the indemnitee must justify it as prudent."

In support of this statement, the majority quote from the St. Louis Dressed Beef case [8] this excerpt: "* * * [A] sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution." Here is where I think the majority are confused. They seem to think and hold that in an action over for indemnity to recover a sum paid in the settlement of a suit, the only question is whether the sum paid was "prudent" in the sense of whether it was a reasonable amount in relation to the injuries suffered and the damages demanded by the original plaintiff. Indeed, the excerpt from the Dressed Beef opinion, standing alone, might be thought to support that view; but, as I have already pointed out, the facts of that case show that the indemnitee was legally liable to the injured person—the Eighth Circuit had certified to the Supreme Court that the indemnitee was negligent—so the only question was whether the settlement was "prudent" in amount. But here, as I have emphasized already, there was no showing whatever that Roscoe-Ajax was negligent and so legally liable to the Williamsons. So, in the language of The Toledo case, the indemnitee here bore "the risk of proving an actual liability in the action over for indemnity." Roscoe-Ajax not only failed to do this, but instead disclaimed actual liability.

Hence, their failure to appreciate the full meaning of the term "prudent settlement" has led the majority into confused thinking. Their opinion indicates, I repeat, that the only consideration entitled to weight is whether the amount paid in settlement was reasonable in relation to the plaintiff's injuries and his demands. They fail to realize that no matter how reasonable a settlement may be in that respect, it is not a "prudent" settlement for which the indemnitee is entitled to recover from the indemnitor *unless the indemnitee was obliged to pay it because of potential liability arising from its negligence.* Thus, the majority are in effect saying the indemnity agreement does *more* than protect Roscoe-Ajax against its own negligence; they are saying it

---

7. 122 F.2d 255, 257, cert. denied Isbrandtsen-Moller Co. v. The Toledo, 314 U.S. 689, 62 S.Ct. 302, 86 L.Ed. 551 (1941).

8. 201 U.S. 173, 182, 26 S.Ct. 400, 404 (1906).

actually indemnifies Roscoe-Ajax against *allegations* of negligence, frivolous or otherwise. To impute such an intent to Moses-Ecco from the terms of the agreement is, to say the least, unrealistic.

As illustrative of the majority's misconception in this regard, I note that they accuse Moses-Ecco of being inconsistent in denying liability for indemnity and at the same time saying "the reasonableness of the settlement is not in dispute * * *." But Moses-Ecco was only saying that $45,000 was a reasonable amount to pay in settlement if—and only if— Roscoe-Ajax had been negligent and so was legally liable to pay damages.

Even under its theory that Roscoe-Ajax was indemnified against its own negligence, I think that, in the absence of evidence to the contrary, the court should accept Roscoe-Ajax's contention that it was in no way responsible for Williamson's injuries, and should hold that therefore the indemnity agreement could not be invoked; this would necessitate reversal and remand with directions to enter judgment in favor of Moses-Ecco.

Alternately, again assuming that Roscoe-Ajax was indemnified against its own negligence, I think the majority could logically reverse the judgment awarding indemnity, and remand the case for a new trial at which evidence would be heard and a finding made as to whether Roscoe-Ajax was negligent and so settled under legal compulsion. This course would give Roscoe-Ajax another opportunity to make out a case for indemnity, and would give Moses-Ecco a chance to cross-examine and to introduce countervailing evidence. Such procedure would avoid the present strained affirmance which requires Moses-Ecco to reimburse Roscoe-Ajax for what seems to me to have been a voluntary and gratuitous settlement.

The foregoing discussion is based on the assumption that the indemnity agreement was intended to and does protect Roscoe-Ajax from the consequences of its own negligence, and in my opinion the discussion is necessary only if the indemnifying language is so construed. As I have said, my brethren are of the view that Moses-Ecco agreed to indemnify Roscoe-Ajax for loss incurred through its own negligence. I disagree. In my opinion, the indemnifying language of the subcontract does not provide *in express terms* that indemnity must be paid for a loss sustained by Roscoe-Ajax through its own negligence, and that therefore the latter was not entitled to indemnity, even had its actionable negligence been established.

It is a general rule that an indemnity agreement does not protect the indemnitee from the consequences of his own negligence unless its language expressly provides for such indemnity. The intent to provide it must clearly and unequivocally appear, and it is held that words of general import are not enough. This general principle, which as far as I know is followed by practically all jurisdictions where the question has arisen, was stated in Southern Bell Tel. & Tel. Co. v. Mayor and Bd. of Aldermen [9] as follows:

"It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. [Cases cited.] * * *"

The Fifth Circuit also held, in Halliburton Oil Well Cementing Co. v. Paulk,[10] that indemnity agreements are strictly construed against him who claims to be an indemnitee, and further said:

"* * * This is particularly true where the result would be to indemnify against one's own negligence, and it will not be so construed unless such obligation is expressed in unequivocal terms. [Cases cited.] * * *"

Among the many other cases to the same effect is City of Boston v. Boston Edison Company.[11] There the City of

9. 74 F.2d 983, 984–985 (5th Cir. 1935).

10. 180 F.2d 79, 84 (5th Cir. 1950).

11. 260 F.2d 872 (1st Cir. 1958).

Boston had been found liable to property owners for negligence in failing to act promptly and effectively when it received notice that an unusual flow of city water was occurring near a place where a break in the city water main was later discovered. Boston Edison had installed, many years before, a steam main near the water main. On the theory that the steam main caused the break in the water main, the City sought indemnity from Boston Edison under an ordinance providing that any person maintaining a structure under a street

" * * * 'shall do so only on condition that such maintenance shall be considered as an agreement on his part with the city to keep the same and the covers thereof in good repair and condition at all times during his ownership and to indemnify and save harmless the city against any and all damages, costs, expenses, or compensation which it may sustain or be required to pay, by reason of such excavation or structure being under or in the street, or being out of repair during his ownership * * *.' "

The City's cross-complaint, based on the indemnity provision of the ordinance, was dismissed because the District Court held that provision could not be construed as intended to save the City harmless from the consequences of its own subsequent independent negligence.

In upholding the dismissal, the First Circuit adopted as relevant (260 F.2d at 880) the following language in Laskowski v. Manning [12] to the effect that a contract of indemnity

" * * * 'will not be considered as indemnifying one against his own negligence, or that of his employees, unless its express language requires it. Such an intent must unequivocally appear, and words of general import are not sufficient. It is not to be assumed in the absence of clear stipulation that a contract is to be

construed as creating a result so far reaching, and involving consequences which may be so hazardous and momentous.' * * * * " [13]

After this quotation, the First Circuit added:

" * * * Especially now, in view of the unassailable finding of the jury in its special verdict to the effect that this subsequent action, or inaction, by the city employees amounted to 'wanton or reckless conduct', it is even more difficult to suppose that this so-called agreement of indemnity was intended to relieve the City of the consequences of such a serious gradation of fault."

On the basis of these cases and many other authorities of identical import, I conclude the indemnity agreement here involved does not protect Roscoe-Ajax from the consequences of its own independent negligence, because it does not expressly, clearly and unequivocally provide for such protection; in fact, it does not so provide even in general terms which, as I have shown, would not be enough. An examination of the agreement for indemnity reveals not a word indicating an intention on the part of the parties to require the indemnitor to save the indemnitee harmless from loss due to its own negligence.

In reaching this conclusion I have not overlooked Chesapeake Beach R. Co. v. Hupp Automatic Mail Exchange Co., 48 App.D.C. 123, 128–129 (1918), which may be thought to depart from the general rule, but which I think is an exception due to the particular facts involved. In the Chesapeake case this court said:

"If we admit that an indemnitor is not liable for the negligence of the indemnitee except where it is expressly provided that it should be, that would not aid the position of the Hupp company and its surety, because as we construe the contract before us it in effect expressly provides

12. 325 Mass. 393, 398, 91 N.E.2d 231, 234 (1950).

13. In the Laskowski opinion, the court quoted this language from an earlier

Massachusetts decision, Boston & Maine Railroad v. T. Stuart & Son Co., 236 Mass. 98, 104, 127 N.E. 532, 534 (1920).

for injuries flowing from negligence. Loss might come to the Chesapeake company through its own negligence, as well as otherwise. The presence on or near the track of the Hupp company's employees, and of others, such as Gilmore, brought there by its invitation, necessarily increased the chances of accident for which the Chesapeake company might be responsible. It was natural that the latter should desire to protect itself against loss on this account, even where it was caused by the negligence of its own employees. If, as contended, it was the intention of the parties to the contract that it should be limited to 'liability for accidents for which the Hupp company's operations were responsible,' it would have been easy to have said so instead of using the all-embracing language which we have been considering."

Hupp was not engaged by the railroad company to aid in accomplishing its purpose, but was merely a tenant of railroad premises whose employees by their presence there increased the possibility of personal injury by the railroad's operation of its trains. It was against this added hazard, said the court, which the railroad company required indemnity.[14] The indemnity agreement was a part of the consideration paid for the use of the premises. Its only purpose was to protect the railroad company from loss because of injury to Hupp's employees and invitees through the railroad's negligence; it was meaningless unless so construed.[15]

This case is quite different. Moses-Ecco was not a tenant whose employees might by their presence add more hazard to Roscoe-Ajax's operations. It was engaged to do a part of the general work, and to some extent its employees were bound to use facilities furnished by Roscoe-Ajax. It was alleged that one of these facilities was defective, through the sole negligence of Roscoe-Ajax, and caused the injury. To apply the ruling of the Chesapeake case to this situation would be to extend its doctrine beyond the facts with which it dealt, and would be contrary to the general rule which is followed in an overwhelming majority of the cases.

I agree with the majority that under our workmen's compensation statute a general contractor is suable as a "third person" by an employee of a subcontractor. Continental Casualty Co. v. Thorden Line, 186 F.2d 992, 996 (4th Cir. 1951). Consequently, I too reject the argument that Williamson's remedy under that statute precluded him from suing Roscoe-Ajax. I also think the third-party complaint against Detwiler was properly dismissed.

In sum, the majority err in two respects: first, in construing the contract as indemnifying Roscoe-Ajax against its own negligence; and second, in affirming an award of indemnity under that construction when the indemnitee's negligence was not claimed, proved or judicially found. I must dissent from the majority's action in holding Moses-Ecco liable as indemnitor in such circumstances.

"* * * Unquestionably the assumption of liability provision was inserted into the contract *in order that the Railroad might be immune from claims that would not arise except for the use of the siding by Princemont.* That the Railroad desired so to protect itself is not unusual. Princemont's use of the site increased considerably the possibility of accidents, and it was protection from this increase of possible liability which the Railroad demanded in consideration for permission to use the siding." (Emphasis added.)

14. While this court said, "Loss might come to the Chesapeake company through its own negligence, as well as otherwise," it is difficult to envisage a situation in which Chesapeake would be liable when it had not been negligent, except it might be liable to pay compensation to its own employees injured through Hupp's negligence.

15. This thought was well expressed by Judge Hood in Princemont Construction Co. v. Baltimore & O. R. Co., 131 A.2d 877, 878–879 (Mun.App.D.C.1957), after citing and following the Chesapeake case, in a similar situation: